Submitted December 3, 2015, reversed February 3, 2016

In the Matter of A. S.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

A. W.,
*Appellant.*

Klamath County Circuit Court
1500191JV;
Petition Number 1500191;
A159982

367 P3d 556

Shannon Storey, Chief Defender, Juvenile Appellate Section, and Holly Telerant, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Paul L. Smith, Deputy Solicitor General, and Karla H. Ferrall, Assistant Attorney General, filed the brief for respondent.

Before Duncan, Presiding Judge, and DeVore, Judge, and Flynn, Judge.

DUNCAN, P. J.

## DUNCAN, P. J.

In this juvenile dependency case, mother appeals the juvenile court's judgment asserting jurisdiction over her three-year-old child, A. The Department of Human Services (DHS) concedes that the juvenile court erred in asserting jurisdiction and that the judgment should be reversed. For the reasons explained below, we agree.

When reviewing the juvenile court's assertion of jurisdiction over a child, "we view the evidence, as supplemented and buttressed by permissible derivative inferences, in the light most favorable to the trial court's disposition and assess whether, when so viewed, the record was legally sufficient to permit that outcome." *Dept. of Human Services v. N. P.*, 257 Or App 633, 639, 307 P3d 444 (2013). Stated in accordance with that standard, the relevant facts are as follows.

In late 2014, mother, father, and A moved in with mother's father (grandfather). Grandfather had a close relationship with A; he had helped raise A since A was six months old. Before they moved in with grandfather, mother and father occasionally left A in grandfather's care for weeks at a time.

After they had moved in with grandfather, mother and father had verbal arguments in the basement of grandfather's house. A did not go into the basement, which had a separate entrance.[1]

Father and grandfather did not get along. Father was loud and, when grandfather would ask father to calm down, father would respond aggressively. Eventually, grandfather told father that he could not live in the house. Father threatened grandfather, and, in response, grandfather filed a petition for a stalking protective order against father. In the petition, grandfather stated that he feared "for the

---

[1] At the jurisdictional hearing, grandfather testified that the basement was a "damp, musty, dusty, cellar with a bunch of stuff in it[,]" including tools. According to grandfather, A did not go down to the cellar, because it was "not a clean enough place for a 3-year-old * * * to be running around" and, because of the tools, even if it were cleaned up, it would be "too easy for him to get hurt in there[,]" so it would still not be "a place for him to play in."

physical safety of [his] home and all in it, even [his] 3-year-old grandson."

The circuit court held a hearing on grandfather's petition. At the conclusion of the hearing, the court issued a stalking protective order against father. Father yelled at the judge, who then said that child protective services should be involved with the family. On his way out of the courthouse, father was "very upset" and "swearing." Outside the courthouse, father yelled "about how upset he was about what had taken place in court."

After father left the courtroom, mother yelled and swore at grandfather for having father excluded from the house and for getting child protective services involved with the family. Mother left the courthouse with A and met up with father, who was still yelling. Father continued to yell for a "couple of minutes" and then turned his attention to A, who was upset, and tried to console him.

The next day, a DHS caseworker visited A at grandfather's house. The caseworker did not "get the feeling it was chaotic in the home; [she] just got the feeling that [grandfather] was the one caring for [A] and that [father] now was no longer allowed there because of his actions." The caseworker interviewed mother and, among other questions, asked whether mother used controlled substances. Mother admitted using marijuana, but denied using any other controlled substances. Mother provided a urine sample, which tested positive for marijuana and methamphetamine. The following week, DHS removed A from grandfather's house and placed him in nonrelative foster care.

DHS petitioned the juvenile court to take jurisdiction of A pursuant to ORS 419B.100(1)(c), which provides, in part, that the juvenile court "has exclusive original jurisdiction in any case involving a person who is under 18 years of age" and "whose condition or circumstances are such as to endanger the welfare of the person or of others[.]" To establish jurisdiction pursuant to ORS 419B.100(1)(c), DHS must present evidence sufficient to support a conclusion that the child's condition or circumstances expose the child to a current threat of serious loss or injury that is likely to be realized. *Dept. of Human Services v. S. D. I.*, 259 Or App 116,

117-18, 312 P3d 608 (2013) (citing *Dept. of Human Services v. A. F.*, 243 Or App 379, 385-86, 259 P3d 957 (2011)). When petitioning the juvenile court to take jurisdiction over a child based on a parent's conduct, DHS must prove a nexus between the conduct and a current threat of serious loss or injury to the child. *Dept. of Human Services v. C. J. T.*, 258 Or App 57, 62, 308 P3d 307 (2013).

In its petition, DHS alleged that A's safety was endangered because (1) mother "has a substance abuse problem," (2) mother "has been subjected to domestic violence by [father] *** and [mother] does not believe that [father] poses a risk to the child[,]" (3) mother has exposed "the child to a chaotic living environment and violent situations[,]" (4) father "has engaged in a pattern of domestic violence" against mother, (5) father "lacks emotional and behavioral regulation resulting in the child witnessing his erratic behaviors[,]" and (6) father's "residential instability interferes with his ability to adequately and appropriately parent."[2] The juvenile court concluded that DHS had proved the first five allegations, but not the sixth, and asserted jurisdiction over A.

---

[2] Specifically, DHS alleged that A's condition and circumstances endangered his welfare as follows:

"1. The mother *** has a substance abuse problem which is not ameliorated and hinders her ability to adequately and appropriately parent and protect her children. This condition places the child under a threat of harm.

"2. The mother *** has been subjected to domestic violence by the father *** some of which has occurred in the presence of the child and the mother does not believe that he poses a risk to the child. This condition places the child under a threat of harm.

"3. The mother *** does not understand the needs of her child and lacks the parenting skills necessary to safely parent the child, such as exposing the child to a chaotic living environment and violent situations. This condition places the child under a threat of harm.

"4. The father *** has engaged in a pattern of domestic violence with the mother *** some of which has occurred in the presence of the child and he has not successfully engaged in treatment for this conduct or addressed his violent behavior. This condition places the child under a threat of harm.

"5. The father *** lacks emotional and behavioral regulation resulting in the child witnessing his erratic behaviors. This condition places the child under a threat of harm.

"6. The father['s] *** residential instability interferes with his ability to adequately and appropriately parent the child. This condition places the child under a threat of harm."

As noted, mother argues that DHS failed to present sufficient evidence to support its allegations and, therefore, the trial court erred in asserting jurisdiction over A. DHS agrees and, for the reasons that follow, so do we.

Regarding the allegations of mother's substance abuse, at the hearing on the jurisdictional petition, DHS presented evidence that mother had tested positive for marijuana and methamphetamine once, and mother herself testified that she had used methamphetamine twice in the months leading up to the hearing. But DHS did not present any evidence that mother used drugs while caring for A or that her drug use had any effect on her parenting. Mother argues, and DHS now agrees, that the evidence was insufficient to support a conclusion that mother's drug use endangered A. *See Dept. of Human Services v. E. M.*, 264 Or App 76, 83, 331 P3d 1054 (2014) (trial court erred in asserting jurisdiction over child where the record did not contain any evidence that mother's drug use posed a nonspeculative threat of serious loss or injury to child); *Dept. of Human Services v. R. L. F.*, 260 Or App 166, 172-73, 316 P3d 424 (2013) (same); *Dept. of Human Services v. C. Z.*, 236 Or App 436, 443-44, 236 P3d 791 (2010) (same). As DHS concedes, "although mother admitted to occasionally using methamphetamine, there was no evidence presented to the court that her drug use had a detrimental impact on [A]. Nor was there any evidence that mother's drug use was more extensive than she had admitted."

Regarding the allegations of domestic violence, DHS concedes that, "although there was some evidence that father had been verbally abusive to mother and grandfather, to the extent that grandfather applied for a stalking protective order * * *, there was no evidence that [A] had ever been exposed to that conduct or that the verbal abuse had ever escalated to physical abuse." Nor was there any evidence that mother's and father's behavior put A at risk of suffering a harm that would justify juvenile court jurisdiction over him. *See S. D. I.*, 259 Or App at 123 (evidence that child could suffer "psychological damage" was not sufficiently specific to support jurisdiction; to establish that a child is at risk of a harm that justifies jurisdiction, DHS must present evidence regarding the type, degree, and duration of the potential

harm); *Dept. of Human Services v. M. E. (A150359)*, 255 Or App 296, 313, 297 P3d 17 (2013) (jurisdiction was not warranted where DHS "failed to present any evidence as to the nature of the physical or emotional injury that [the child] was reasonably likely to suffer").

Similarly, the evidence regarding the allegations that mother's exposure of A to a "chaotic living environment and violent situations" and father's lack of "emotional and behavioral regulation" was insufficient to support jurisdiction. As noted, there was no evidence that A had witnessed any physical violence, and, even if A had seen or heard disagreements between his parents or between his parents and grandfather, DHS did not present evidence that such exposure put A at risk of serious harm or injury. *See State ex rel Dept. of Human Services v. D. T. C.*, 231 Or App 544, 554-55, 219 P3d 610 (2009) (father's drinking, which frightened his children and caused him to be mean and controlling, was not sufficient to justify juvenile court jurisdiction).

In sum, DHS failed to present evidence to support its allegations that A's condition and circumstances justified juvenile court jurisdiction over A.

Reversed.