Argued and submitted March 3, affirmed September 14, 2016

In the Matter of N. P.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

C. P.,
*Appellant.*

Josephine County Circuit Court
100118J;
Petition Number 10118J02;
A160428 (Control)

In the Matter of N. P.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

C. P.,
*Appellant.*

Josephine County Circuit Court
110064J;
Petition Number 110064J02;
A160429

383 P3d 390

Holly E. Telerant, Deputy Public Defender, argued the cause for appellant. With her on the brief was Shannon Storey, Chief Defender, Juvenile Appellate Section, Office of Public Defense Services.

Judy C. Lucas, Assistant Attorney General, argued the cause for respondent. With her on the brief were Ellen F. Rosenblum, Attorney General, and Paul L. Smith, Deputy Solicitor General.

Before Ortega, Presiding Judge, and Lagesen, Judge, and Garrett, Judge.

## ORTEGA, P. J.

In this consolidated juvenile dependency case, father appeals orders denying his motions to dismiss jurisdiction and terminate wardships over his two children.[1] After the court held a permanency hearing and changed the permanency plan from reunification to adoption, father filed motions to dismiss jurisdiction and terminate the wardships. In support of his motions, he asserted that the children's paternal grandfather could care for the children, claiming that, if the children were in grandfather's care, the bases for jurisdiction (which were all related to parents' inability to safely parent the children) would no longer expose the children to a current threat of serious loss or injury. After a hearing addressing grandfather's suitability as the children's caregiver, the court denied father's motions. On appeal, father makes one argument in support of six assignments of error. He argues that the Department of Human Services (DHS) failed to prove that his plan to have grandfather care for the children would expose the children to a current risk of serious loss or injury that was likely to be realized. In those circumstances, father claims that the court should have granted his motions to dismiss jurisdiction and terminate the wardships.

After this case was briefed and argued on appeal, we decided *Dept. of Human Services v. T. L.*, 279 Or App 673, 379 P3d 741 (2016). In that case, we touched on two issues that are potentially at play in this appeal. First, we addressed whether evidence "that another person is available and willing to help parents care for a child—in a way that will mitigate the risks posed by the grounds on which dependency jurisdiction is founded—[is] relevant to the determination of whether dependency jurisdiction continues[.]" 279 Or App at 676. We concluded that such evidence is governed by "principles of evidentiary relevance," and that it generally will be probative of whether there is a continued risk of harm posed by the jurisdictional bases. *Id.* at 685.

---

[1] Mother has admitted that several conditions prevent her from safely parenting the children. She did not participate in the dependency proceedings at issue on appeal and is not a party to this consolidated appeal.

Second, we addressed whether motions to dismiss jurisdiction were "legally cognizable" after a permanency plan has been changed away from reunification, and if so, who has the burden of proof on such motions. *Id.* at 686-87. We held that a motion to dismiss jurisdiction is legally cognizable in that situation. *Id.* at 689-90. However, we also concluded that, when a permanency plan for a child is something other than reunification, there is a presumption that the jurisdictional bases continue to make it unsafe for the child to return home, and if the proponent of continuing jurisdiction invokes that presumption, the parents bear the burden of proof on their motion to dismiss. *Id.* at 692. In *T. L.*, the juvenile court had concluded that evidence that a relative was available and willing to help the parents care for the child was not relevant to whether the juvenile court should continue jurisdiction. *Id.* Accordingly, we vacated and remanded for the juvenile court to reconsider the motion to dismiss under the standards announced in the opinion. *Id.*

We address the effect of *T. L.* on our analysis in this case in more detail later in the opinion, but we note at the outset that it ultimately does not change our analysis in any significant way. That is, given the way this case was presented and decided below, it ultimately presents this straightforward question: whether, viewing the evidence in the light most favorable to the juvenile court's ultimate conclusion to deny father's motions, the evidence is legally sufficient, despite grandfather's ability and willingness to care for the children, to support the court's determination that the original bases of jurisdiction pose a current threat of harm to the children's welfare if jurisdiction is dismissed. We conclude that the record is legally sufficient to support the juvenile court's determination, and affirm.

For purposes of our analysis, the relevant facts are few. In June 2012, DHS removed the children and placed them in foster care due to reports of domestic violence in parents' home. The juvenile court asserted jurisdiction over the children in August 2012 based on domestic violence, father's criminal activity, parents' substance abuse, mother's mental health, and parents' inability to overcome their parenting deficits after previously being offered services. DHS returned the children to mother's care in September 2013,

but after another domestic violence incident between parents, DHS removed the children and placed them back into foster care. Father was imprisoned in March 2014 for a probation violation related to that domestic violence incident.

At a permanency hearing in September 2014, father stipulated that he would be unavailable to parent the children within a reasonable time and agreed that a change in the permanency plans to something other than reunification was warranted. DHS sought to change the plans to adoption, while father sought to change the plans to guardianship, with grandfather as the guardian. The court changed the permanency plans to adoption. In the court's letter opinion, it explained that guardianship was not an appropriate plan. It found that grandfather did not have "anything near a parent/child relationship with the children" and that "[a]s a truck driver [grandfather] is clearly dedicated to his job and providing a living wage based upon the huge number of hours he is on the job. He must rely on his aged mother to provide care for the children for the substantial part of most days of the week." Father appealed the resulting permanency judgments, and we affirmed without opinion. *Dept. of Human Services v. C. P.*, 271 Or App 590, 354 P3d 774, *rev den*, 358 Or 145 (2015).

After the change in permanency plan, father moved to dismiss jurisdiction over the children, arguing that grandfather's availability and willingness to care for them obviated the need for jurisdiction because, under grandfather's care, the bases for jurisdiction would not expose the children to a current threat of serious loss or injury. Father argued that because he had executed a "delegation of parental authority" to grandfather, under *Dept. of Human Services v. A. L.*, 268 Or App 391, 342 P3d 174 (2015), there existed no current threat of harm to the children and there remained no continuing basis for jurisdiction.

The court held a hearing on father's motions to dismiss, which focused on grandfather's suitability as a caregiver for the children and the applicability of *A. L.* At the hearing, a mental health therapist testified regarding his 2013 assessment of grandfather's potential parenting capacity. He testified that, at that time, grandfather had

presented as an adequate caregiver who could generally take care of the children's basic needs, seemed to demonstrate suitable behavior and an ability to manage his home and personal life, and did not abuse alcohol or drugs. The therapist acknowledged that, although he did not have any concerns that grandfather would pose any risk to the children's welfare, he had some concerns "about [grandfather's] capacity to maintain boundaries strong enough to keep his own children out of the grandchildren's lives without appropriate supervision and appropriate * * * safety processes in place." He also testified that at the time of his assessment, he did not have specific information regarding the long-term permanency needs of the children.

Grandfather testified at the hearing, explaining that he had taken parenting classes and a foster care course. He explained that if he became a caregiver for the children, he had made arrangements at work to switch to day shifts and had child care available for the times he was at work. He also discussed his general mental and physical ability to care for the children and his financial ability to meet their needs.

Lastly, the DHS caseworker assigned to the case testified that grandfather's visits with the children were generally appropriate. She also testified, however, that grandfather's visits were supervised because "he doesn't have healthy boundaries" and that there were concerns about placing the children with grandfather due to "anger management issues," and "being able to set healthy boundaries with the parents."

In its closing argument, DHS focused on whether, if jurisdiction was dismissed, the original bases of jurisdiction would persist and expose the children to a risk of serious loss or injury that was likely to be realized. DHS argued that father's plan to delegate "parental authority" to grandfather would not alleviate the ongoing risks to the children. Among other reasons, the delegation would have no legal effect, because DHS was the current legal guardian of the children and, in any event, such a delegation was temporary and "revocable by the parent at any time." Accordingly, "if the court were to dismiss today, certainly the child[ren]'s

welfare is still in danger by the parent's current circumstances." DHS also distinguished *A. L.*, pointing out that that case involved a challenge to the original assumption of jurisdiction under circumstances where the parents had entrusted primary care of their children to the grandparents. We concluded there that, because the grandparents did not pose a current threat of harm, there was no basis for jurisdiction. In DHS's view, that case is inapposite because here the parents do not dispute that the bases for taking jurisdiction are ongoing, but only whether those bases continue to pose a risk of harm to the children if grandfather assumes responsibility for their care for the first time.

The court issued an order denying father's motions. In a letter opinion, the court explained that *A. L.* was inapposite given that, in that case, the grandparents had cared for the children before jurisdiction was taken. The court also noted that issues relating to grandfather's suitability as a guardian had been litigated at the September 2014 permanency hearing and that, although that proceeding occurred under different statutory provisions, the juvenile court's observations in its letter opinion changing the permanency plan to adoption "remain true as of the date of the hearing on this matter."

Before analyzing the merits of this appeal, we pause to address the effect that *T. L.* has on our analysis in this case. As noted, in *T. L.*, we considered "two important and recurring questions" related to motions to dismiss juvenile court jurisdiction. First, we addressed evidence that a relative was willing and able to care for the children in order to assist the parents in mitigating the risks posed by the original bases for juvenile court jurisdiction. We simply held in *T. L.* that such evidence is generally probative of the current risk posed by the jurisdictional bases and is therefore generally relevant to a court's decision on a motion to dismiss. 279 Or App at 685. We vacated the court's denial of the parents' motion to dismiss because it had concluded that such evidence was not relevant and had excluded it. *Id.* at 692. Here, unlike in *T. L.*, the juvenile court did not view the evidence of grandfather's ability to care for the children as irrelevant to its analysis of father's motions to dismiss;

rather, it concluded that, despite that evidence, the bases for jurisdiction continued to pose a current risk of harm to the children. That is, the court was not persuaded by the evidence that grandfather's care would ameliorate the risk posed by the ongoing jurisdictional bases. Accordingly, the court's decision to consider the evidence is consistent with *T. L.*

As for the burden of proof issue decided in *T. L.*, here the parties litigated the motion to dismiss under their understanding of the law at the time of the hearing—that in the face of a motion to dismiss jurisdiction, DHS, as the proponent of continuing jurisdiction, had the burden to prove by a preponderance of the evidence that the factual bases for jurisdiction persisted and continued to pose a risk of harm that was likely to be realized. Given that, the court necessarily concluded that DHS proved a current risk of harm despite father's arrangement with grandfather. *T. L.* explains that the burden is actually on the *parents* once the permanency plan is changed away from reunification, as it had been in this case. *Id.* Nevertheless, the court here proceeded with an understanding of the burden of proof that was *more* favorable to father, and still denied the motions to dismiss. In that circumstance and, as we explain below, because the evidence was sufficient to permit the court to determine that DHS carried that burden, the court's application of the wrong burden of proof does not affect our analysis. That is, even under the view that DHS had the burden of proof, the court did not err by denying father's motions.

We proceed to the merits of father's argument. Under *Dept. of Human Services v. N. P.*, 257 Or App 633, 639-40, 307 P3d 444 (2013), "we view the evidence, as supplemented and buttressed by permissible derivative inferences, in the light most favorable to the trial court's disposition and assess whether, when so viewed, the record was legally sufficient to permit that outcome." In doing so, we

"(1) assume the correctness of the juvenile court's explicit findings of historical fact if these findings are supported by any evidence in the record; (2) further assume that, if the juvenile court did not explicitly resolve a disputed issue of material fact and it could have reached the disposition that

> it reached only if it resolved that issue in one way, the court implicitly resolved the issue consistently with that disposition; and (3) assess whether the combination of (1) and (2), along with nonspeculative inferences, was legally sufficient to permit the trial court['s determination]."

*Id.* We do not "substitute our assessment of the persuasiveness of the evidence for the juvenile court's" nor do we "revisit the juvenile court's resolution of factual disputes or its choice among reasonable inferences." *Id.* at 640. Our review is limited to whether the evidence was sufficient to permit the challenged determination. *Id.*

Father argues that the children would be safe in grandfather's care, which would alleviate any risk that the original bases for jurisdiction (all related to parents' inability to safely care for the children) posed to them. He claims that it is undisputed that grandfather would assume primary parenting responsibilities if the juvenile court terminated the wardship and that DHS's "own expert" assessed grandfather as an adequate parenting resource. Father also asserts that the evidence showed that grandfather's "remote history of domestic violence and drug use was not a present concern." He further points out that, although not "necessary," he has signed a document delegating his "parental authority" to grandfather. DHS reiterates the arguments it made in the juvenile court—essentially that father did not eliminate the risks posed by the original jurisdictional bases by proposing a placement of his choosing.

We conclude that, viewing the evidence, as we must, in the light most favorable to the court's decision to deny father's motions to dismiss jurisdiction and terminate the wardships, the record is legally sufficient to support the court's determination. Father's motions were based on his assertion that grandfather's willingness and ability to care for the children would eliminate the threat of serious loss or injury posed by the ongoing jurisdictional bases. As we recounted, the court heard competing evidence on whether grandfather's care would alleviate those risks. Ultimately, the court denied father's motions and we assume that, in doing so, the court implicitly resolved the disputed issue of fact—that is, whether grandfather's care would ameliorate

the current risk of serious loss or injury posed by the jurisdictional bases to the children—against father. As we pointed out in *T. L.* even though evidence that a relative can assist parents in mitigating the risks associated with the jurisdictional bases is relevant,

> "[t]hat does not mean that the court is required to be persuaded by the [relative's] testimony, or that [the relative's] testimony would preclude the court from determining that the jurisdictional bases continue to pose a threat * * * that is reasonably likely to be realized. Whether evidence is persuasive or not is a question for the factfinder."

279 Or App at 686 n 7.

Here, the court implicitly concluded that father's evidence regarding grandfather's ability to ameliorate the risk to the children was not persuasive. We agree with DHS that there is legally sufficient evidence to support the juvenile court's determination that the original bases for jurisdiction continued to pose a current threat of serious loss or injury and that it is likely that those bases would result in harm to the children's welfare if jurisdiction were dismissed. *See id.* at 685 (setting out "two-part inquiry" for evaluating motions to dismiss dependency jurisdiction). Of particular importance, there was evidence that grandfather had difficulty setting or maintaining "boundaries" with parents. Given that parents' inability to safely parent the children was undisputed, evidence that grandfather would have difficulty protecting the children from the risks posed by parents if the juvenile court dismissed jurisdiction was sufficient to support the juvenile court's determination that the children would be at a current risk of harm from the original jurisdictional bases. Accordingly, the court did not err by denying father's motions.

Affirmed.