No. 147          February 28, 2024          295

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of J. W. M.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

B. L. M.,
*Appellant.*

Yamhill County Circuit Court
22JU05299; A180870 (Control)

In the Matter of L. A. M.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

B. L. M.,
*Appellant.*

Yamhill County Circuit Court
22JU05300; A180871

Cynthia Kaufman Noble, Judge.

Submitted October 13, 2023.

Shannon Storey, Chief Defender, Juvenile Appellate Section, and Sarah Peterson, Deputy Public Defender, Office of Public Defense Services, filed the briefs for the appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Jon Zunkel-deCoursey, Assistant Attorney General, argued the cause for respondent.

Before Aoyagi, Presiding Judge, and Joyce, Judge, and Jacquot, Judge.

AOYAGI, P. J.

Reversed.

**AOYAGI, P. J.**

Father appeals two judgments asserting dependency jurisdiction over his two children. The juvenile court entered those judgments after father admitted that he "uses inappropriate physical discipline and lacks the parenting skills to safely and appropriately parent the child[ren]" and mother admitted that she "does not have sole legal custody of the child[ren] and is unable to protect the child[ren] from father's abusive behavior." Father contends that, notwithstanding those admissions, the juvenile court erred in asserting dependency jurisdiction over the children, because the children do not face a current threat of serious loss or injury that is likely to be realized. Father relies on the fact that, before the Department of Human Services (DHS) filed the dependency petitions, mother obtained an immediate-danger order in parents' domestic relations case that grants her temporary custody and allows father only supervised parenting time. We agree with father that, on this record, DHS failed to prove that the requirements for dependency jurisdiction were met and, accordingly, reverse.

In September 2022, one of the children disclosed during an interview at Juliette's House Child Abuse Intervention Center that he had been physically abused by father. Based on that disclosure, mother, acting *pro se*, filed a motion in parents' domestic relations case, seeking temporary custody under an immediate-danger order. *See* ORS 107.139 (providing a post-judgment procedure to obtain a temporary order regarding custody or parenting time when a child is "in immediate danger"). Such an order is intended to ensure a child's safety while custody modification proceedings are underway. *See* ORS 107.139(4) ("A party seeking relief under this section shall concurrently file, or have pending, a motion under ORS 107.135 to set aside, alter or modify any portion of the judgment that provides for custody, parenting time or visitation."). The domestic relations court granted the motion *ex parte* and, after a hearing held at father's request, continued the immediate-danger order on November 2, 2022. Under the order, mother has custody of the children, and father has supervised parenting time. Two individuals—the children's paternal grandmother, and

father's significant other—are designated "to act as supervisors with sight and sound supervision."

On November 4, 2022, DHS filed dependency petitions for the children, alleging that their conditions and circumstances endanger their welfare for a variety of reasons, all related to father physically injuring them and mother being unable to protect them. By that time, both children had disclosed physical abuse. The juvenile court held a shelter hearing and subsequently issued a shelter order.[1]

In January 2023, mother admitted to an allegation in the petitions—that she "does not have sole legal custody of the child[ren] and is unable to protect the child[ren] from father's abusive behavior." In February 2023, father admitted to a separate (amended) allegation in the petitions—that he "uses inappropriate physical discipline and lacks the parenting skills to safely and appropriately parent the child[ren]." At both hearings, father asserted that the legal standard for dependency jurisdiction was not met, despite the admissions, because the immediate-danger order adequately protected the children from any current risk of harm.

The juvenile court asserted dependency jurisdiction over the children. Regarding the immediate-danger order, the court expressed the view that ORS chapter 107, governing domestic relations and immediate-danger orders, and ORS chapter 419B, governing juvenile dependency proceedings, do not work together well and that their relationship merits legislative attention. Ultimately, we understand the court to have concluded that the children remained at risk despite the immediate-danger order, for reasons not articulated on the record.

Father appeals. In six assignments of error (three as to each child), he argues that it was error to assert

---

[1] The juvenile court took judicial notice of the immediate-danger order at the shelter hearing and, on the same day, consolidated the domestic relations case with the dependency cases. Both below and on appeal, everyone has treated the immediate-danger order as part of the record in the dependency cases, and we do the same, taking judicial notice to the extent necessary. *See* OEC 201(b)(2) (regarding types of facts that can be judicially noticed); *State v. C. H.*, 195 Or App 538, 542, 98 P3d 767 (2004), *rev den*, 338 Or 16 (2005) (taking judicial notice of prior court orders).

dependency jurisdiction based on parents' admissions, because, given the immediate-danger order, the children do not face a current threat of serious loss or injury that is likely to be realized. It is a requirement for dependency jurisdiction that "the child's condition or circumstances expose the child to a current threat of serious loss or injury that is likely to be realized." *Dept. of Human Services v. A. W.*, 276 Or App 276, 278, 367 P3d 556 (2016). "DHS has the burden to prove that the threat is current and nonspeculative; it is not sufficient for the state to prove that the child's welfare was endangered sometime in the past." *Dept. of Human Services v. A. L.*, 268 Or App 391, 397, 342 P3d 174 (2015) (internal quotation marks omitted).

In response, DHS first challenges preservation. We agree with father that his claim of error is preserved. At both the January and February 2023 hearings, father asserted that, notwithstanding parents' admissions, the legal requirements for dependency jurisdiction were not met, because the immediate-danger order adequately protected the children. That is the same issue raised on appeal. The purposes of preservation were served.

DHS next contends that we should not review any challenge by father to the assertion of dependency jurisdiction based on mother's admission. DHS asserts that "father cannot raise claims on behalf of mother" because, "[g]enerally, a party can litigate issues only on behalf of themselves and cannot litigate issues for other parties." We do not understand father to be litigating any issues for mother. As previously described, the issue raised by father is whether, in light of the immediate-danger order, his and mother's admissions are legally insufficient to support the court's assertion of dependency jurisdiction. We do not understand father to be challenging mother's admission itself, but, rather, the legal effect of the admission.

It is well established that "the juvenile court's focus at the hearing on jurisdiction is on *the child's* conditions or circumstances at the time of the hearing and whether the totality of those circumstances demonstrates a reasonable likelihood of harm to the welfare of the child." *Dept. of Human Services v. W. A. C.*, 263 Or App 382, 393, 328

P3d 769 (2014) (internal quotation marks omitted; emphasis in original). The juvenile court must consider all of the evidence, including any admissions made by the child's parents, to determine whether the requirements for dependency jurisdiction are met. *Dept. of Human Services v. Z. M.*, 316 Or App 327, 348, 504 P3d 1208 (2021) ("A parent may admit facts to support dependency jurisdiction, but an admission is not necessarily conclusive evidence to establish an allegation. Rather, the juvenile court must determine whether, under the totality of the circumstances, there is a reasonable likelihood of harm to the welfare of the child." (Internal quotation marks and citation omitted.)). We see no reason why, in a case involving two parents, one parent would be precluded from making legal arguments about the other parent's admission as part of challenging the sufficiency of the evidence as a whole to meet the legal standard for dependency jurisdiction.[2] *See id.* (agreeing with the father's argument that the mother's admission was insufficient to support jurisdiction over the children).

Having resolved those procedural issues, we turn to the merits. "[W]e view the evidence, as supplemented and buttressed by permissible derivative inferences, in the light most favorable to the trial court's disposition and assess whether, when so viewed, the record was legally sufficient to permit" the assertion of dependency jurisdiction. *Dept. of Human Services v. N. P.*, 257 Or App 633, 639, 307 P3d 444 (2013).

Here, the juvenile court did not hold an evidentiary hearing on dependency jurisdiction, instead considering only parents' admissions and the immediate-danger order in deciding whether to assert jurisdiction over the children. To reiterate, father admitted that he "uses inappropriate physical discipline and lacks the parenting skills to safely and

---

[2] We note that this situation is distinguishable from one in which a parent is challenging the sufficiency of the evidence to support two intertwined factual findings in support of jurisdiction, one relating to the parent (such as that the parent engages in domestic violence) and one relating to the other parent (such as that the other parent is unable to protect). *See Dept. of Human Services v. S. P.*, 249 Or App 76, 86, 275 P3d 979 (2012) (holding that the mother could challenge all of the jurisdictional findings on appeal, including those pertaining to the father, because the findings were interdependent). Father is not challenging the *facts* to which he or mother admitted. He is challenging only their legal effect.

appropriately parent the child[ren]," and mother admitted that she "does not have sole legal custody of the child[ren] and is unable to protect the child[ren] from father's abusive behavior." The question before us on appeal is whether, taking into account the immediate-danger order, those admissions were legally sufficient to establish that the children face "a current threat of serious loss or injury that is likely to be realized." *A. W.*, 276 Or App at 278. Father argues that they were not. Essentially, father argues that the immediate-danger order protects the children from physical abuse—by giving mother custody and allowing father only supervised parenting time—even if mother herself is unable to protect them from father's abuse (per her admission). We note that DHS has never alleged, nor was there any evidence, that father is not complying with the immediate-danger order or that he has previously disobeyed court orders.

In concluding that the children were still at current risk, notwithstanding the immediate-danger order, it is possible (based on remarks in the record) that the juvenile court was concerned about the fact that mother was representing herself in the domestic relations proceeding and might fail to obtain a permanent change of custody. However, neither the juvenile court nor DHS, below or on appeal, has explained how the possibility that mother might in the future fail to obtain a permanent change of custody means that there is a current, nonspeculative threat of serious harm to the children that is likely to be realized. The juvenile court did not explain its reasoning, nor is it apparent why a present court order (obtained before the dependency petitions were filed) that gives custody to mother and requires father's parenting time to be supervised does not protect the children enough to avoid "a current threat of serious loss or injury that is likely to be realized." *A. W.*, 276 Or App at 278.

Finally, we reject DHS's argument that, if we consider a DHS caseworker's testimony at the shelter hearing regarding a concern that DHS had about one of the supervisors designated in the immediate-danger order, that evidence coupled with parents' admissions would be sufficient to meet the legal standard for jurisdiction. We cannot consider that testimony—nor does the juvenile court appear to

have considered it—because the shelter-hearing testimony is not part of the evidentiary record for the jurisdictional judgments.[3] *See State ex rel Juv. Dept. v. T. S.*, 214 Or App 184, 196, 164 P3d 308, *rev den*, 343 Or 363 (2007) (declining to consider testimony from a shelter hearing in deciding whether the evidence was sufficient for dependency jurisdiction, because the "relevant record" was the record made for the jurisdictional hearing, and the shelter-hearing testimony was not part of that record).

In sum, for the reasons stated, the juvenile court erred in asserting dependency jurisdiction over the children.

Reversed.

---

[3] We also note that shelter hearings and dependency hearings differ with respect to what evidence may be considered. *Compare* ORS 419B.185(f) (at shelter hearings, relevant evidence may be considered "without regard to whether the evidence is admissible under" most rules of evidence), *with* ORS 419B.310(3)(a)(A) (at jurisdictional hearings, generally, absent an admission by a party, the alleged facts "must be established * * * [b]y a preponderance of competent evidence").