172 September 18, 2024 No. 669

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of N. O.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

E. O.
and B. L.,
*Appellants.*

Curry County Circuit Court
23JU02716; A182158 (Control)

In the Matter of C. O.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

E. O.
and B. L.,
*Appellants.*

Curry County Circuit Court
23JU02717; A182159

In the Matter of J. O.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

E. O.
and B. L.,
*Appellants.*
Curry County Circuit Court
23JU02718; A182160

In the Matter of J. O.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

E. O.
and B. L.,
*Appellants.*

Curry County Circuit Court
23JU02719; A182161

Cynthia Lynnae Beaman, Judge.

Submitted June 6, 2024.

Shannon Storey, Chief Defender, Juvenile Appellate Section, and Holly Telerant, Deputy Public Defender, Oregon Public Defense Commission, filed the brief for appellant E. O.

Aron Perez-Selsky and Michael J. Wallace filed the brief for appellant B. L.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Emily N. Snook, Assistant Attorney General, filed the brief for respondent.

Before Aoyagi, Presiding Judge, Joyce, Judge, and Jacquot, Judge.

JOYCE, J.

Reversed.

**JOYCE, J.**

Father and mother appeal from a juvenile court judgment taking jurisdiction over their four children, N, C, J, and JA. The juvenile court found the children to be within its jurisdiction because (1) mother had engaged in physical abuse or inappropriate discipline causing a safety threat; (2) while in mother's custody, C suffered a non-accidental or inflicted injury at variance with mother's explanation; and (3) parents had exposed the children to a volatile home environment that created a threat of harm. We view the evidence in the light most favorable to the juvenile court's determination and assess whether the evidence was sufficient to permit its ultimate determination. *Dept. of Human Services v. C. P.*, 281 Or App 10, 17, 383 P3d 390 (2016). While we agree with the juvenile court's reasoning regarding the risk that mother posed to the children, we nevertheless reverse the jurisdictional judgment because we conclude that DHS did not show that father's conduct endangered the children.[1]

"In reviewing the juvenile court's jurisdictional determination, the question is whether [DHS] has proved, by a preponderance of the evidence, that the child's welfare is endangered by the parents' conduct" because there is a current threat of serious loss or injury to the child. *Dept. of Human Services v. K. C. F.*, 282 Or App 12, 14, 19, 383 P3d 931 (2016). "There must be a nexus between the parent's conduct or condition and harm to the child." *Id.* at 19. "[T]he state must present evidence about both the severity of the harm and the likelihood that it will occur[,]" and "the type, degree, and duration of the harm must be such that exposure to a reasonable likelihood of that harm justifies juvenile court jurisdiction." *Dept. of Human Services v. S. D. I.*, 259 Or App 116, 121, 312 P3d 608 (2013). "The threat of serious harm to the child cannot be speculative"; rather, "the child must be exposed to danger"—*i.e.*, "conditions or circumstances that involve being threatened with serious loss or injury." *K. C. F.*, 282 Or App at 20 (internal quotation marks omitted).

The evidence presented at the jurisdictional trial showed that C, who was 6 years old, sustained several injuries

---

[1] The juvenile court concluded that DHS did not prove that father was unable to protect the children from mother or other similar facts.

within a short period of time. Mother told the children to tell DHS that "no one was hurting them," and, as to one of the injuries, C simply said that his mother did not do it and that he was "supposed to say I got it on my own." As to another injury, several bruises on his back, C said that mother hit him because he did not clean up the house. His sister also reported that mother had hit C, but she thought it was because C was climbing shelves. Both children later changed their account of how C got the bruises, saying that they were the result of falling from playground equipment. Mother denied causing the injuries and suggested that perhaps N had caused them; later, she suggested that C fell off playground equipment. The children described mother and father fighting and yelling frequently and that the children would get "smacks" or spankings from parents, but that father had ceased using a belt in doing so. Mother admitted to hitting the children "lightly" and only when they are doing something "unsafe." She denied yelling and fighting with father in front of the children. Three of the four children have difficulties with aggression—including C, who has threatened to cut children at his school with scissors—and several described feeling fearful when parents fight. Mother complained that at least one of the children was becoming aggressive towards her. The court also heard testimony from a person who worked at a batterer's intervention program that described the impacts on children who experience volatile home environments and domestic violence (including aggression, social isolation, and fear).

In taking jurisdiction over the children, the juvenile court found that the children had all been coached to provide a different description of what caused C's injuries. As to mother, it found that mother had been telling the children "not to talk about things." It also observed, at least as to C, that the "unsafe" acts that C engaged in—which prompted mother to use physical discipline against him—were happening frequently. Moreover, in light of mother's coaching, denial that she caused C's injuries, and minimization of her actions, the juvenile court concluded that the risk of physical abuse or inappropriate discipline presents a present risk of harm to C and, by extension, to the other children. Relatedly, it found that C suffered a non-accidental injury that was at variance with mother's explanation. Finally, as

to both mother and father, it found that mother and father were exposing the children to a volatile environment by frequently fighting and yelling with each other, which was impacting the children by causing them to experience fear and aggression.

Both parents appeal, contending that the evidence was insufficient to show that parents' conduct creates a current threat of serious loss or injury to the children. *K. C. F.*, 282 Or App at 14, 19. During the pendency of the appeal, DHS returned the children to mother. DHS moved to dismiss the appeal as moot. In response, mother argued that the appeal was not moot because the jurisdictional judgment was based in part on mother's abuse of her children, she has a job that involves background checks, and she was terminated from her employment as a result of DHS involvement. She further explained that the judgment will impact any future employment applications for similar employment, a collateral consequence that in her view kept the appeal alive. *See State v. K. J. B.*, 362 Or 777, 785-86, 416 P3d 291 (2018) (collateral consequences of a judgment may prevent an appeal from becoming moot). The Appellate Commissioner agreed, finding that in a dependency case that involves findings of abuse, impacts on a parent's employment is a "sufficient adverse consequence" that prevented dismissal.

With that factual and procedural background in mind, we conclude that the record supports the juvenile court's determination that mother has engaged in physical abuse or inappropriate discipline and that C suffered an injury at odds with mother's explanation. C reported that mother caused the bruises on his back because he had not cleaned the house. N corroborated his account that mother had struck him. Both later changed their accounts of how C got the bruises, but the juvenile court found that they did so as a result of coaching, a finding that is supported by the record. And given mother's denials that she has ever struck C, the coaching of the children to deny any physical abuse, her shifting the blame for C's injuries to N, and her repeated minimizations of the abuse, the evidence was sufficient for the juvenile court to find that the risk of harm was present and ongoing.

We reach a different conclusion as to the court's taking of jurisdiction based on a volatile home environment as to both parents. On this record, we conclude that the state failed to prove that mother or father has exposed the children to a volatile home environment that creates a threat of harm. To be sure, there is evidence that mother and father yell and curse at one another and in front of the children. But to the extent that the children heard disagreements between parents, DHS did not present evidence that such exposure put the children at risk of serious harm or injury. *See, e.g.*, *Dept. of Human Services v. A. W.*, 276 Or App 276, 280-81, 367 P3d 556 (2016) (rejecting a finding of jurisdiction based on evidence of the mother's exposure of child to a "chaotic living environment" because even if the child had seen or heard disagreements between parents, "DHS did not present evidence that such exposure put [the child] at risk of serious harm or injury"). Thus, because we reverse the only basis for jurisdiction as to father (exposure to a volatile home environment), we reverse the entire judgment. *See Dept. of Human Services v. E. M.*, 264 Or App 76, 84-85, 331 P3d 1054 (2014) (when jurisdiction is reversed as to one parent and "there is no established link" between that parent's ability to parent safely and the proven allegation against the other parent, the appropriate disposition is to reverse the entire judgment).

Reversed.