620 April 9, 2025 No. 320

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of G. L. S.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*
*and*

G. L. S.,
*Respondent,*

*v.*

E. M. S. M.,
*Appellant.*

Marion County Circuit Court
23JU05994; A184777 (Control)

In the Matter of J. T. S.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*
*and*

J. T. S.,
*Respondent,*

*v.*

E. M. S. M.,
*Appellant.*

Marion County Circuit Court
23JU05996; A184779

In the Matter of M. L. S.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*
*and*

M. L. S.,
*Respondent,*

*v.*

E. M. S. M.,
*Appellant.*

Marion County Circuit Court
23JU05997; A184780

In the Matter of R. M. S.-S.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*
*and*

R. M. S.-S.,
*Respondent,*

*v.*

E. M. S. M.,
*Appellant.*

Marion County Circuit Court
23JU05998; A184781

Manuel Perez, Judge.

Argued and submitted February 18, 2025.

Gabe Newland, Deputy Public Defender, argued the cause for appellant. Also on the brief was Shannon Storey, Chief Defender, Juvenile Appellate Section, Office of Public Defense Services.

Greg Rios, Assistant Attorney General, argued the cause for respondent Department of Human Services. Also on the brief were Dan Rayfield, Attorney General, and Benjamin Gutman, Solicitor General.

George W. Kelly filed the brief for respondent G. L. S.

Aron Perez-Selsky filed the brief for respondents J. T. S., M. L. S., and R. M. S.-S.

Before Aoyagi, Presiding Judge, Egan, Judge, and Joyce, Judge.

JOYCE, J.

Affirmed.

**JOYCE, J.**

Father appeals from a judgment of the juvenile court that took jurisdiction over his children. He raises 48 assignments of error. The large number of claims of error stems from both the number of children (4) and the number of alleged jurisdictional bases (10). In his first four assignments of error, father contends that the juvenile court erred in allowing the two youngest children to testify without first having been sworn as required by OEC 603. Those claims of error, which are unpreserved, are not plain. Father next assigns error to each jurisdictional basis for each child, as well as to the ultimate ruling taking dependency jurisdiction. *See Dept. of Human Services v. R. H.*, 320 Or App 383, 387, 512 P3d 1279 (2022) (describing the difference between assigning error to individual allegations versus the ultimate dependency jurisdiction ruling). Father has not developed any argument on appeal as to why nine of the jurisdictional bases are not supported by the evidence; we therefore do not consider those claims of error further. As to the jurisdictional allegation for which father on appeal does develop an argument—that father exposed the children to inappropriate physical or psychological discipline—we conclude that father's claim of error is unpreserved. As to the juvenile court's ultimate decision to take jurisdiction over the children, we disagree with father that the record does not support the court's finding that father's conduct exposed the children to a cognizable risk of harm. Accordingly, we affirm.

## OEC 603

We begin with father's claims of error that the juvenile court erred in allowing the two youngest children, G and J, to testify in the absence of a formal oath or affirmation. G and J are twins and were nine years old at the time of the jurisdictional hearing. Prior to G's testimony, an attorney for the Department of Human Services (DHS) asked G a series of questions to elicit from him whether he was able to differentiate between the truth and a lie. The attorney, who was wearing a purple shirt, asked G, "[I]f I were to tell you that I was wearing a red shirt, would that be true or not true?" G responded that, because she was wearing a purple

shirt, "that's lying." The attorney also asked, "[I]f I said that I had a black coat on, would that be true or not true?" and G responded that that "would be true." The attorney explained that, while in the courtroom, "we ask people to only talk about things that are true." She then asked G, "Can you agree that while we're here and talking today that you'll only tell us things that are true?" G responded, "Of course."

DHS's attorney engaged in a similar colloquy with J. She asked him, "[I]f I were to tell you that I'm wearing a red shirt, would that be true or not true?" J responded that it would be false because counsel was wearing a purple shirt. She repeated the question about the black jacket, and J said it was true that she was wearing a black jacket. He also agreed that he would only talk about things that were true. The court also asked J whether he "promise[d] to only tell the truth today," and J responded, "I promise."

At no point during or after those colloquies did father object. On appeal, he contends that the juvenile court committed plain error by not requiring G and J to declare, "by oath or affirmation," that they would testify truthfully. Father relies on OEC 603(1), which provides that, before testifying, "every witness shall be required to declare that the witness will testify truthfully, by oath or affirmation administered in a form calculated to awaken the conscience of the witness and impress the mind of the witness with the duty to do so." As we understand father's argument, because the rule is mandatory in nature—every witness "shall" be required to take an oath or affirmation—the juvenile court's failure to administer an oath or affirmation before J's and G's testimony is plain error.

We disagree that any error is plain. *See State v. C. P.*, 310 Or App 631, 635, 486 P3d 845 (2021) (describing plain error review). Sections (2) and (3) of the rule provide two procedures that a court "may" use to administer an oath or affirmation. The permissive nature of 603(2) and (3) suggests that trial courts have flexibility in how they administer oaths or affirmations. OEC 603's commentary confirms that understanding and emphasizes particular flexibility when it comes to children testifying. The commentary explains that, "Although the rule sets forth suggested forms of an

oath and affirmation, it does not require any particular verbal formula" and is "designed to afford flexibility in dealing with *** children." Legislative Commentary to OEC 603, *reprinted in* Laird C. Kirkpatrick, *Oregon Evidence* § 603.02, 484 (7th ed 2020). "A flexible approach is particularly relevant in the case of a witness under 10 years of age," meaning that "[a]n 'affirmation' under the rule would include a child's promise to tell the truth, once it has been established to the satisfaction of the court that the child understands the nature and obligation of that promise." *Id.*

In this case, both J and G—witnesses under 10 years of age—underwent a colloquy with counsel that showed that they knew the difference between a truth and a lie. They also both agreed that they would tell the truth during their testimony. Particularly in the plain error context in which father's claims arise, we cannot say that it is obvious that anything more was required to satisfy OEC 603.

## CHALLENGE TO JURISDICTIONAL BASES

As noted above, father on appeal has assigned error to each of the bases upon which the court took jurisdiction over the children. With respect to nine of the 10 jurisdictional bases, father has provided no argument as to why the evidence was insufficient to support the juvenile court's decision that jurisdiction on those bases was warranted. Therefore, we do not address those jurisdictional bases on appeal. *See R. H.*, 320 Or App at 387 (describing the difference between assigning error to individual allegations versus the ultimate dependency jurisdiction ruling); *Migis v. AutoZone, Inc.*, 282 Or App 774, 787-88, 387 P3d 381 (2016), *adh'd to on recons*, 286 Or App 357, 396 P3d 309, *rev den*, 362 Or 300 (2017) (declining to address an undeveloped argument on appeal).

As to the allegation that father subjected the children to "inappropriate physical or psychological discipline," father argues that that jurisdictional basis was not supported by the evidence and the court thus erred in taking jurisdiction on that basis. He argues first that there was no evidence that the discipline that father used against the children was "inappropriate." Second, he argues that

there was no evidence of any discipline, physical or otherwise, against one of the children, J, whom father generally treated differently than the other three children. Because father did not preserve those challenges, we affirm.

Father's arguments below focused largely on whether DHS had proven that father had exposed the children to physical violence and to his drug and alcohol abuse. Father argued that the event that led to the children going into foster care—a 10-hour standoff with police and a SWAT team—was a one-time event that was unlikely to reoccur; that DHS had not proven that father had a drug and alcohol issue that impaired his ability to parent; and that, as to the "physical and domestic violence aspects,"[1] exposure to "an intoxicated parent or to domestic violence is not in itself a basis for" jurisdiction, absent a showing that the children were at risk of harm and that the harm was likely to reoccur.

Father then turned to the allegation that he had "used violence towards the kids," which we understand to be a reference to the jurisdictional basis that father now challenges on appeal. As to that allegation, father focused on the fact that he had had custody of the children for almost five years, no prior reports had been made to DHS about his care, and the single incident with SWAT failed to show that "the kids were in threat of harm." None of those arguments would have alerted the court to the arguments that father now raises on appeal, namely, that DHS failed to prove that the discipline that father used was "inappropriate" and that, to the extent that father had subjected the other children to physical or psychological discipline, he had not treated J in a similar fashion and thus the court could not take jurisdiction over J on that basis.

We disagree with what we understand father's point at oral argument to be with respect to preservation.

---

[1] We understand that reference to be an argument directed at several of the jurisdictional bases that alleged that father had "exposed the child[ren] to violence," that he engages in "impulsive, aggressive, dangerous, or violent behavior," and that father "has a pattern of controlling, aggressive, or violent behavior towards others causing him to engage in behavior that places the child[ren] at risk of harm." Stated slightly differently, several jurisdictional bases involved father's violence towards others that places the children at a risk of harm. Those allegations are separate from the allegations that father used inappropriate discipline against the children themselves.

Father argues that he preserved his argument by broadly asserting that jurisdiction was inappropriate; in his view, he did not need to further argue, for instance, that jurisdiction on this basis was not warranted as to J because the evidence showed that father treated him differently. We understand the preservation requirement differently. Preservation principles require "a party to explain its objection clearly enough for the opposing party, and the trial court, to understand the issue and either avoid an error, or correct an error if one has occurred." *State v. Skotland*, 372 Or 319, 327, 549 P3d 534 (2024). Because the juvenile court in this case would be "taken aback to find itself reversed" on the grounds that father now raises, *id.* at 329, the argument is not preserved, and we decline to consider it. *See also Dept. of Human Services v. J. M. R.*, 335 Or App 273, 275, 558 P3d 437 (2024), *rev den*, 373 Or 212 (2025) (concluding that the mother's argument on appeal was not preserved because the argument "meaningfully differ[ed] from the argument she made below.").

## CHALLENGE TO THE JUVENILE COURT TAKING JURISDICTION

In contrast, by arguing that the court should not take jurisdiction over the children and that the children were not at a present risk of harm, father did preserve a challenge to the juvenile court's ultimate conclusion that jurisdiction was warranted. *See* ORS 419B.100(1)(c) (the juvenile court has jurisdiction over a child whose "condition or circumstances are such as to endanger the [child's] welfare"); *Dept. of Human Services v. A. W.*, 276 Or App 276, 278, 367 P3d 556 (2016) (for the court to take jurisdiction, DHS must present evidence "sufficient to support a conclusion that the child's condition or circumstances expose the child to a current threat of serious loss or injury that is likely to be realized"). We have reviewed the record and conclude that there is ample evidence—including of father's drug use and physical and psychological abuse—to support the juvenile court's conclusion that the children were at a current risk of serious harm.

Affirmed.