244 November 14, 2024 No. 826

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of A. S. C.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

C. B. C.,
*Appellant.*

Douglas County Circuit Court
23JU04709; A183492

Ann Marie Simmons, Judge.

Argued and submitted September 13, 2024.

Gabe Newland, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Shannon Storey, Chief Defender, Juvenile Appellate Section, Office of Public Defense Services.

Jeff J. Payne, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Shorr, Presiding Judge, Powers, Judge, and Pagán, Judge.

PAGÁN, J.

Reversed and remanded for entry of judgment omitting allegations 4E and 4G as bases for jurisdiction; otherwise affirmed.

**PAGÁN, J.**

In this juvenile dependency case, father challenges the juvenile court's taking of jurisdiction over his minor child, S, pursuant ORS 419B.100(1)(c).[1] The juvenile court took jurisdiction after concluding that mother's and father's substance abuse, domestic violence, chaotic lifestyle, and anger management issues subjected S to a threat of harm. On appeal, father raises eleven assignments of error, contending that the court erred in concluding that mother's conduct subjected S to a threat of harm (assignments one through four); erred in concluding that father's conduct subjected S to a risk of harm (assignments five through nine); erred in denying father's motion for dismissal (assignment ten); and erred by asserting dependency jurisdiction over S (assignment eleven). Because we conclude that the evidence was insufficient with regards to father's anger issues, chaotic lifestyle, and residential instability to support those bases on which the juvenile court took jurisdiction, we reverse on assignments of error seven and eight and remand with instructions to enter a judgment that omits the unproven allegations as bases for jurisdiction. We otherwise conclude that the juvenile court's determinations are supported by the record, and thus affirm on the remaining assignments.

"[T]he juvenile court has exclusive original jurisdiction in any case involving a person who is under 18 years of age and \* \* \* [w]hose condition or circumstances are such as to endanger the welfare of the person or of others[.]" ORS 419B.100(1)(c). In reviewing a juvenile court's determination of jurisdiction in child protection proceedings, we:

"(1) assume the correctness of the juvenile court's explicit findings of historical fact if these findings are supported by any evidence in the record; (2) further assume that, if the juvenile court did not explicitly resolve a disputed issue of material fact and it could have reached the disposition that it reached only if it resolved that issue in one way, the court implicitly resolved the issue consistently with that disposition; and (3) assess whether the combination of (1) and (2), along with nonspeculative inferences, was legally sufficient to permit the trial court to determine that ORS 419B.100(1)(c) was satisfied."

---

[1] Mother does not appeal the jurisdictional judgment.

*Dept. of Human Services v. N. P.*, 257 Or App 633, 639-40, 307 P3d 444 (2013).

The Department of Human Services (DHS) must prove that there is "a current threat of serious loss or injury that is likely to be realized." *Dept. of Human Services v. T. L. H. S.*, 292 Or App 708, 714, 425 P3d 775 (2018). DHS must also prove that there is "'a nexus between the allegedly risk-causing conduct and the harm to the child,' and that the risk of harm is nonspeculative and present 'at the time of the hearing.'" *Dept. of Human Services v. W. A. C.*, 263 Or App 382, 403, 328 P3d 769 (2014) (quoting *Dept. of Human Services v. C. J. T.*, 258 Or App 57, 62, 308 P3d 307 (2013)). "[I]t is not sufficient for the state to prove that the child's welfare was endangered sometime in the past." *Dept. of Human Services v. M. Q.*, 253 Or App 776, 785, 292 P3d 616 (2012).

On January 12, 2024, the juvenile court entered a jurisdictional judgment in which it determined that DHS had proved the following jurisdictional bases:

- 4A "Mother's substance abuse interferes with her ability to safely parent the child."

- 4B "Mother's involvement in a domestically violent relationship interferes with her ability to safely parent the child."

- 4C "The mother's chaotic lifestyle and/or residential instability interfere with her ability to safely parent the child."

- 4D "Mother needs the assistance of DHS and the court in order to adequately and safely meet the child's educational and emotional needs."

- 4E "The father lacks impulse control and anger management skills, which have emotionally harmed the child."

- 4G "The father's chaotic lifestyle and/or residential instability interfere with his ability to safely parent the child."

- 4H "Father needs the assistance of DHS and the court in order to safely parent the child."

- 4I "The father is aware of the mother's substance abuse issues and is unable to act protectively."

- 4J "The father's substance abuse issues interfere with his ability to safely parent the child."

We start by addressing the assignments of error related to mother (assignments one through four). In combined argument, father contends that he was the only parent responsible for S's care at the time of the dependency hearing, and because mother was isolated from both father and S as she received in-patient drug treatment "for at least 120 days," DHS did not prove that any of mother's alleged parenting deficits presented a current threat to S. *See e.g., Dept. of Human Services v. E. M.*, 264 Or App 76, 84, 331 P3d 1054 (2014) (concluding that DHS must prove both parents are incapable of parenting safely before a court can assert jurisdiction over a child).

Having reviewed the record, we reject that argument because there was sufficient evidence for the juvenile court to find that mother's recent entry into drug treatment did not eliminate the threat of harm mother posed to S. Specifically, the record included evidence that mother struggled with longstanding drug use and had repeated relapses, that she received a domestic violence conviction after stabbing father through the hand, and had frequent probation violations and sanctions, including numerous UAs which tested positive for fentanyl, methamphetamine, and cannabinoids. *See e.g., Matter of A. M. B.*, 320 Or App 184, 189-90, 512 P3d 876 (2022) (continuing drug use, along with probation violations and sanctions, were sufficient to prove a chaotic lifestyle). Further, despite being aware of mother's drug issues,[2] father left S in mother's care and S's hair sample tested positive for fentanyl within three months of the hearing, establishing that S had been recently exposed to the drug. Given evidence of mother's substantial drug use, problems with violence, continuing criminal issues, and S's exposure to fentanyl, the juvenile court did not err in concluding that mother presented a current threat of harm to

---

[2] Father claimed in August 2023 that he didn't know that mother was using drugs. However, mother claimed that father was supplying her and was himself using.

S on the bases listed in the dependency judgment regarding mother.

We now address the bases for jurisdiction alleged against father (assignments of error five through nine). Here, father argues that DHS failed to prove that, at the time of the hearing, father had "substance abuse issues," and that his lifestyle was "chaotic." Father also contends that the department failed to prove that any of father's other alleged deficits, including his "residential instability" and "impulse control and anger management skills," exposed S to a current threat of serious harm. Father also challenges the basis that he is aware of "mother's substance abuse issues and is unable or unwilling to act protectively."

Regarding father's "substance abuse issues," and the allegation that he is "aware of *** mother's substance abuse issues but is unable or unwilling to act protectively," we conclude that there is sufficient evidence in the record to support jurisdiction over S on both of those bases. The record includes evidence that father was potentially evading drug tests and that a caseworker observed father during multiple visits slumped over in a way that indicted drug use. Further, the record included statements by mother that father was using drugs and that he supplied mother with drugs. That evidence, combined with S's hair sample testing positive for fentanyl, supports a conclusion that father's drug use interfered with his ability to safely parent and that he was aware of mother's substance abuse issues but was unwilling to act protectively.

We also agree that there was sufficient evidence from which the juvenile court could conclude that "[f]ather needs the assistance of DHS and the court in order to safely parent the child," because S had visible decay on her teeth, had not received dental work in two years, and was a year behind in school due to an excessive number of absences. While some of S's frequent absences could be attributed to the COVID-19 pandemic and failure by the school to provide adequate bussing, they do not explain S missing three weeks of school during the start of fourth grade in 2023 because of parents' failure to enroll her. Thus, viewing that evidence in the light most favorable to the state, there was

sufficient evidence from which the juvenile court could have reasonably inferred that father did not know how to care for S without DHS intervention.

Turning to allegations that were not proven by sufficient evidence, we agree with father that the department failed to sufficiently show that father's "chaotic lifestyle and residential instability," and "impulse control and anger management skills," exposed S to cognizable risk of harm.

In support of its determination that DHS had proved the allegation that father lacked "impulse control and anger management skills," the juvenile court relied on statements by S stating that parents "would fight a lot" and that a 2021 domestic violence incident occurred between the parents. However, in that incident, which occurred several years before the jurisdictional hearing, it was father who was the victim, not the perpetrator, of domestic violence. Mother slapped S, and when father intervened, mother "stabbed him in his hand." As a result, mother was convicted of Assault 3 with father being the victim.

The trial court also relied on testimony from DHS caseworkers, stating that father was unable "to hear hard stuff," that he "got angry" when asked to disclose medical records, and that he spit in the direction of a caseworker when S was being removed from parents' care. However, no testimony was presented showing that those incidents presented a risk of harm to S, and as we have previously recognized, "[h]ostility toward DHS is not itself a basis to [assert] jurisdiction." *Dept. of Human Services v. T. D. G.*, 301 Or App 465, 476, 455 P3d 591 (2019).

As to the jurisdictional basis that father's "chaotic lifestyle" and "residential instability" exposed S to serious harm, the juvenile court focused on evidence that father's trailer—the family's home—was parked near Stewart Park in "not the safest place in town," where "[c]ars go through," and that S played at the park unsupervised after father fell asleep. However, the evidence put forth by DHS in support of that basis was vague and unspecific[3] and did not clearly

---

[3] The evidence was based on a statement made by S where she allegedly told a DHS caseworker that "mom and dad smoke pot and go to [sleep] and I go to the park."

address whether this was a singular incident or a frequent occurrence or whether father was likely to leave S unsupervised in the future. Further, DHS was unable to establish where the trailer was parked at the time of the hearing. When DHS tried to establish that fact, a caseworker admitted that she did not know "where [the trailer] is today," and that father was "trying to get into housing." Thus, the evidence presented by DHS was, by itself, insufficient to prove that father's "chaotic lifestyle and residential instability" exposed S to a nonspeculative risk of injury that was likely to be realized. *See generally Dept. of Human Services v. S. D. I.*, 259 Or App 116, 121, 312 P3d 608 (2013) ("the state must present evidence about both the severity of the harm and the likelihood that it will occur").

In conclusion, the record is insufficient to support the juvenile court's determination that father's "chaotic lifestyle," "residential instability," and "impulse control and anger management skills" exposed S to a current threat of serious loss or injury. However, a preponderance of evidence supports the juvenile court's conclusion that the other bases for jurisdiction, whether considered individually or in conjunction with each other, present a harm to S that is likely to be realized. The trial court did not err in denying father's motion to dismiss the dependency petition and did not err by ruling that S was within its dependency jurisdiction.

Reversed and remanded for entry of judgment omitting allegations 4E and 4G as bases for jurisdiction; otherwise affirmed.