No. 711                    August 6, 2025                    447

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of J. B.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

A. M. B.,
*Appellant.*

Baker County Circuit Court
24JU03484; A186346 (Control)

In the Matter of J. B.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

A. M. B.,
*Appellant.*

Baker County Circuit Court
24JU03485; A186347

Matthew B. Shirtcliff, Judge.

Argued and submitted May 28, 2025.

Gabe Newland, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Shannon Storey, Chief Defender, Juvenile Appellate Section, Oregon Public Defense Commission.

Erica L. Herb, Assistant Attorney General, argued the cause for respondent. Also on the brief were Dan Rayfield, Attorney General, and Benjamin Gutman, Solicitor General.

Before Shorr, Presiding Judge, Powers, Judge, and Pagán, Judge.

PAGAN, J.

Reversed and remanded for entry of judgments omitting jurisdictional bases 4C and 4I in Case Nos. 24JU03484 and 24JU03485 and omitting inability to provide dental care from jurisdictional bases 4F and 4L in Case No. 24JU03485; otherwise affirmed.

**PAGÁN, J.**

In this consolidated juvenile dependency case, mother appeals from judgments asserting dependency jurisdiction over her two children, five-year-old JA and four-year-old JE, based on parents' inability to provide the children necessary dental and medical care (jurisdictional bases 4F and 4L in both cases); residential instability and chaotic lifestyle (jurisdictional bases 4C and 4I in both cases); inadequate supervision of the children; failure, inability, or unwillingness to provide structure and supervision the children needed; and inability or unwillingness to recognize and protect the children from a dangerous living environment and unsafe place (jurisdictional bases 4D and 4J in both cases).[1] Mother assigns error to the juvenile court's assertion of jurisdiction over both children based on parents' inability or unwillingness to protect the children from a dangerous or unsafe place and residential instability and chaotic lifestyle. She also assigns error to the court's assertion of jurisdiction over JE based on parents' inability to provide him with necessary dental (but not medical) care. We reverse as to the "residential instability and chaotic lifestyle" basis for jurisdiction over both children and as to the "inability to provided necessary dental *** care" for JE, and we otherwise affirm the jurisdictional judgments.

Absent *de novo* review, which mother does not seek, when reviewing the juvenile court's assertion of jurisdiction, "[w]e view the evidence, as supplemented and buttressed by permissible derivative inferences, in the light most favorable to the juvenile court's disposition and assess whether, when so viewed, the record was legally sufficient to permit the outcome." *Dept. of Human Services v. T. L. H. S.*, 292 Or App 708, 709, 425 P3d 775 (2018). We state the facts in accordance with that standard.

According to mother, from the time JA could walk, he would "run off," and, by at least the fall of 2022, both JA and JE sometimes got out of the family home without parents being aware. Mother estimated that those types of incidents occurred on "[m]aybe 10 occasions." After each incident, parents made changes in the home, such as screwing windows

---

[1] Father is not a party to this appeal.

shut and installing a chain lock above the children's height, but JA would nonetheless find ways to get out of the home, and JE would often follow him. However, parents did not seek out counseling or other services to address the children's elopement issues.

In September 2023, the family was evicted from the apartment where they had lived for about five years. For at least a few weeks, the family stayed in motels and at the homes of friends and acquaintances. Eventually, they moved into a trailer on the property of a friend (hereinafter referred to as the "Trailer property"). The Trailer property had lots of debris, including scrap metal with sharp edges and "junked" cars. JA and JE sometimes played in the cars and pretended to drive.

In November 2023, JA fell and cracked his front teeth on the bathtub. Parents took him to the emergency room a week later after he complained about his teeth hurting, where he was prescribed antibiotics and advised to see a dentist. Parents scheduled two to three appointments with a local dentist but missed those due to bad weather. JA continued to complain about dental pain and sensitivity to heat and cold, and parents again took him to the emergency room in May or June 2024, where he was once again prescribed antibiotics and advised to follow up with a dentist.

In May or June 2024, while mother and father were present, JA climbed into a car on the Trailer property that had no windows and, before parents could intervene, "hit the gearshift down." The car rolled about 20 feet downhill, pinning JE and the bike trailer he was in under the car. JE was transported via Life Flight to a hospital in Boise, Idaho, where he was treated for his injuries, which were serious and included a lacerated liver.

Within weeks after that incident, then-four-year-old JE started a fire while the family was napping one day. JE awoke mother in time for the family to safely evacuate, but a portion of the trailer was badly damaged.

Finally, in early July 2024, police received a report that two children were playing in the road near the Trailer property, and, when police arrived two to three minutes later,

they found JA and JE near the property fence line, near the road. Within a week, the Oregon Department of Human Services (ODHS) filed petitions alleging that JA and JE were within the juvenile court's dependency jurisdiction, removed them from parents' care, and placed them in substitute care.

Shortly after the removal, ODHS had the children evaluated by medical, dental, and mental health professionals. JA was "significantly speech delayed." His doctor, who had not seen him since 2020, believed that his speech delay would have been identified and addressed earlier had he been brought to regular well-child doctor appointments as is generally recommended.

The dentist who evaluated the children did not find any decay in JE's teeth, and, although he noted some decay in JA's teeth, he was unable to thoroughly examine his teeth and referred him to a pediatric dentist. Ultimately, JA had dental surgery to extract two teeth, and several others were "capped."

Mental health professionals who evaluated the children diagnosed them with adjustment disorders, in part resulting from their removal from parents' care. The professional who evaluated JE also identified a differential diagnosis for him of disinhibited social engagement disorder, which involves a pattern of behavior in which a child will actively approach or interact with unfamiliar adults. She believed that JE would need ongoing assessment to determine whether he met the diagnostic criteria.

The juvenile court held trial on ODHS's petitions in September 2024. At that time, both children were receiving speech services, JE was in a Head Start program, and JA was on a "504 plan" at school that accommodated his challenges in sitting still through the academic portions of the school day. Neither JA nor JE were fully toilet trained, which might have been attributable to their adjustment disorders. Both children were working with mental health professionals, and their sessions were focused on identifying, coping with, and appropriately expressing their emotions. JA's counselor had also referred him to a "skills trainer" to help him with social skills and believed it was "very

important" that he participate in those services, as well as continue counseling.

Also, at the time of trial, parents were living in a travel trailer on the Trailer property, which mother acknowledged was not adequate for the children to live in, at least in part because it was not winterized. However, parents planned to move into a two-bedroom, one-bathroom house with a fully fenced yard and were in the process of removing trash from the house and preparing to move in, with assistance from ODHS in getting a dumpster. If the children were returned to parents' care before that house was ready, they "would probably get a motel" and were "in the process of getting a loan" to do so. Both mother and father testified that they would not change how they parented JA and JE.

At the conclusion of the trial, the juvenile court orally ruled, among other things, that ODHS had proved that parents were unable to provide necessary medical care for both children but had not proved that they were unable to provide either child with needed behavioral care or that they were unable to provide JE with needed dental care. The court otherwise ruled that ODHS had proved the remaining allegations.[2] Thereafter, the court entered judgments asserting jurisdiction over both children based on parents' inability to provide the children necessary dental and medical care; residential instability and chaotic lifestyle; inadequate supervision of the children; failure, inability, or unwillingness to provide structure and supervision the children needed; and exposure of the children to a dangerous living environment and unsafe place and inability or unwillingness to recognize and protect the children from harm. This appeal followed.

When, as in this case, ODHS petitions the juvenile court to assert jurisdiction over a child because, under ORS 419B.100(1)(c), the child's conditions and circumstances endanger their welfare, it bears the burden of proving a current risk of serious loss or injury to the child that will likely be realized without juvenile court intervention. *Dept. of Human Services v. K. B. L.*, 340 Or App 482, 490, ___ P3d ___ (2025). That burden includes demonstrating a nexus

---

[2] Prior to trial, the court, on ODHS's motion, dismissed allegations that parents' substance abuse impaired their ability to safely parent both children.

between the parent's allegedly risk-causing conduct and a threat of harm to the child of the type, degree, and duration as to justify juvenile court intervention into the constitutionally protected family sphere. *Dept. of Human Services v. S. D. I.*, 259 Or App 116, 121, 312 P3d 608 (2013). Proof of harm or risk at some point in the past is insufficient; the threat must be current at the time of trial. *State v. S. T. S.*, 236 Or App 646, 654, 238 P3d 53 (2010). Nor can the risk be speculative; there must be a reasonable probability that the risk will be realized. *Dept. of Human Services v. J. H.*, 292 Or App 733, 738, 425 P3d 791 (2018). Exposure to a parent's unconventional lifestyle, without evidence demonstrating that such exposure is likely to seriously harm the child, is insufficient to support jurisdiction. *Dept. of Human Services v. D. M.*, 248 Or App 683, 688, 275 P3d 971 (2012).

Once the juvenile court has established dependency jurisdiction over a child, the facts proved as bases for that jurisdiction guide and circumscribe the inquiries and decisions the court may be called upon to make in the ongoing dependency case, such as whether ODHS has made reasonable efforts to reunify the family and whether the parent's progress has been sufficient to make reunification possible. *Dept. of Human Services v. N. T.*, 247 Or App 706, 715-16, 271 P3d 143 (2012); *see also Dept. of Human Services v. L. A. K.*, 306 Or App 706, 716, 474 P3d 925 (2020) ("[T]he alleged and proven jurisdictional basis becomes critical language *** around which the entire juvenile case orbits. It is the pleaded and proven jurisdictional basis that delineates the authority of the court."). That is, in making its determinations regarding ODHS's efforts and the parent's progress, the juvenile court may only rely on those facts "explicitly stated or fairly implied by the jurisdictional judgment." *N. T.*, 247 Or App at 715-16.

We begin with mother's first two assignments of error, in which she contends that the juvenile court erroneously entered the judgment asserting jurisdiction over JE that included parents' inability to provide "needed dental *** care" as a basis for jurisdiction.[3] Mother concedes that

---

[3] As noted, mother does not challenge the juvenile court's assertion of jurisdiction over JA and JE based on the allegations relating to parents' inadequate supervision of the children and failure, unwillingness, or inability to provide

the evidence was sufficient to support that factual basis for jurisdiction over JA, and she does not challenge the court's assertion of jurisdiction over JE based on parents' inability to provide JE needed *medical* care. She does, however, contend that the evidentiary record does not support a ruling that JE was endangered because parents were unable to provided necessary dental care. Moreover, as noted, the juvenile court orally ruled that ODHS had not proved that allegation in the petition concerning JE. ODHS concedes that the juvenile court erred as mother contends. Having reviewed the record, we agree with and accept that concession and reverse and remand with instructions to omit parents' inability to provide JE needed dental care as a basis for jurisdiction over him.

We turn next to mother's seventh through tenth assignments of error, in which she argues that the juvenile court erred in asserting jurisdiction over JA and JE based on parents' inability or unwillingness to recognize and protect the children from a dangerous living situation and unsafe place. There is ample evidence in the record that the Trailer property, where the family lived prior to the children's July 2024 removal, was filled with hazardous conditions for children, including abandoned cars and scrap metal, and that those conditions, in combination with parents' inadequate supervision, resulted in serious injuries to JE only three to four months prior to the September 2024 jurisdiction trial. We understand mother to argue that the risks to JA and JE presented by the Trailer property were ameliorated by the time of trial because she and father were planning to move away from the Trailer property. We disagree. At the time of trial, parents continued to live on the Trailer property, and there is no evidence that any of the dangerous conditions on that property had changed in any material way by the time of trial. Indeed, mother acknowledged at trial that parents' living situation at that time was "not adequate" for the children. We readily conclude that the risks posed to the children by the Trailer property were not ameliorated by parents' intent to move away from that property and into a potentially safer home for the children at some point following the trial. We therefore affirm as to the bases for

---

them the supervision and structure they needed. We, therefore, do not address those bases for dependency jurisdiction.

jurisdiction that parents were unable or unwilling to recognize and protect the children from a dangerous living situation and unsafe place.

Finally, we address mother's third through sixth assignments of error, in which she argues that the juvenile court erroneously asserted jurisdiction over the children based on parents' "residential instability and chaotic lifestyle." ODHS argues, and the juvenile court concluded, that evidence in the record supported that jurisdictional basis, namely evidence that the family experienced a period of "residential instability" in fall 2023 that ultimately ended in their move onto the inherently dangerous Trailer property. We acknowledge that this is a somewhat close question but ultimately conclude that the record was not sufficient to establish that "residential instability and chaotic lifestyle" was, at the time of trial, a *current* condition or circumstance that endangered either JA or JE. The evidentiary record established that, historically, the family had not frequently moved. Indeed, prior to September 2023, parents had lived in the same apartment for about five years, for most of that time with the children. And, although they experienced a brief period of residential instability, the evidence in the record demonstrates that, by the time of the jurisdictional trial, they had lived on the Trailer property for many months. Although that living situation was not safe for the children, it was not unstable or likely to lead to future dangerous living environments for the children. Unlike the circumstances in fall 2023, parents had located a potentially safe home for the children and were preparing to move into that home. Although they were unable to do so by the time of trial, there is no evidence in the record demonstrating that parents' plan to move was unlikely to be implemented relatively soon following the jurisdictional trial. We therefore reverse as to those jurisdictional bases concerning both JA and JE and remand for entry of judgments omitting those jurisdictional bases.

Reversed and remanded for entry of judgments omitting jurisdictional bases 4C and 4I in Case Nos. 24JU03484 and 24JU03485 and omitting inability to provide dental care from jurisdictional bases 4F and 4L in Case No. 24JU03485; otherwise affirmed.