Argued and submitted March 18, reversed and remanded July 2, 2014

In the Matter of E. L. T.,
a Child.
DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

E. M.,
*Appellant.*

Lane County Circuit Court
13198J;
Petition Number 13198J01;
A155322

331 P3d 1054

Holly E. Telerant, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Inge D. Wells, Assistant Attorney-In-Charge, argued the cause for respondent. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Ortega, Presiding Judge, and DeVore, Judge, and Garrett, Judge.

ORTEGA, P. J.

## ORTEGA, P. J.

Mother appeals a juvenile court judgment asserting jurisdiction over her daughter, E, pursuant to ORS 419B.100(1)(c). On appeal, mother contends that the court erred in asserting jurisdiction based on its determination that mother's substance abuse interferes with her ability to safely parent E. In particular, she contends that the Department of Human Services (DHS) failed to satisfy its burden to show that mother's substance abuse persisted at the time of the jurisdictional hearing and, alternatively, that the evidence failed to establish that any substance abuse persisted to an extent and degree likely to lead to a serious threat of loss or injury to E. We agree with mother, and reverse and remand the jurisdictional judgment.[1]

Neither of the parties request *de novo* review, and we decline to exercise our discretion to conduct such review in this case. *See* ORAP 5.40(8)(c) (stating that we exercise *de novo* review only in "exceptional" cases). Accordingly, we "view the evidence, as supplemented and buttressed by permissible derivative inferences, in the light most favorable to the trial court's disposition and assess whether, when so viewed, the record was legally sufficient to permit that outcome." *Dept. of Human Services v. N. P.*, 257 Or App 633, 639, 307 P3d 444 (2013). In doing so, we "(1) assume the correctness of the juvenile court's explicit findings of historical fact if th[ose] findings are supported by any evidence in the record; (2) further assume that, if the juvenile court did not explicitly resolve a disputed issue of material fact *** the court implicitly resolved the issue consistently with that disposition; and (3) assess whether the combination of (1) and (2), along with nonspeculative inferences, was legally sufficient" to permit the court's assertion of jurisdiction. *Id.* at 639-40.

In May 2013, when E was one month old, DHS petitioned for jurisdiction over her, asserting the following allegations:

---

[1] The court also asserted jurisdiction over E based on its determination that father's substance abuse interfered with his ability to safely parent E. Father is not a party to this appeal.

"A.  [M]other tested positive for controlled substances while pregnant, and * * * mother's substance abuse interferes with her ability to safely parent the child.

"B.  [M]other is aware that the father is a convicted sex offender who has failed to engage in treatment. [M]other has failed to recognize the threat that the father poses towards the child and she has failed to act protectively on the child's behalf.

"C.  [M]other's criminal activities interfere with her ability to safely parent the child.

"D.  [F]ather's substance abuse interferes with his ability to safely parent the child.

"E.  [F]ather is a convicted sex offender who has failed to complete treatment.

"F.  [F]ather's mental health interferes with his ability to safely parent the child."

At the close of the jurisdictional hearing, the court concluded that DHS had proved by a preponderance of the evidence that father's and mother's substance abuse interfered with their ability to safely parent E, and made E a ward of the court. Notably, the court concluded that DHS had failed to prove that the other allegations presented a current risk of harm to E, and dismissed those allegations.

Given the court's disposition and the issue on appeal, we limit our discussion of the facts to those related to mother's substance abuse, except where necessary to provide additional context. Mother tested positive for amphetamine and tetrahydrocannabinol (THC) in February 2013 at a prenatal medical appointment. Two months later—four days before E's birth—mother tested positive for THC. E was born prematurely on April 10, 2013. There was no evidence that mother's drug use contributed to E's premature birth, and E did not test positive for any illicit substances at birth. E spent her first five weeks in the Neonatal Intensive Care Unit (NICU). DHS became involved with the family upon E's birth, based on father's status as an untreated sex offender and concerns about the parents' substance abuse.

DHS and mother agreed to a safety plan in which E, upon discharge from the NICU, would reside with E's

great-grandmother, Parker, and have no contact with father. Mother agreed to a "drug and alcohol screen," but denied any drug use to DHS. At DHS's request, mother completed a urinalysis (UA) on April 17 and again on April 25 while E was in the NICU. Both UAs were negative for illegal drug use. E was discharged from the hospital on May 2, and, on May 13, mother failed to show up at a UA requested by DHS. On May 14, mother asked her DHS caseworker for permission to move with Parker and E to Alaska, where Parker permanently resided. The caseworker informed mother that DHS intended to file a petition to make E a ward of the court and that mother could not leave Oregon with E.

On May 15, the caseworker went to mother's home to serve a summons and was informed that mother had moved to Ketchikan, Alaska, with E and Parker. DHS filed the petition for jurisdiction on May 17, and, on May 20, at a shelter hearing, the juvenile court awarded temporary custody of E to DHS and issued a "pickup warrant" to return E to Oregon. Mother and E were returned to Oregon, and DHS took E into protective custody on June 21, 2013.

At the jurisdictional hearing on August 19, 2013, DHS adduced evidence to support the facts described above. Further, DHS established that mother had not engaged in any type of drug and alcohol treatment and that mother acknowledged that she had used marijuana during her pregnancy for morning sickness, even though she did not have a prescription. Mother also acknowledged that four years before the jurisdictional hearing she had used heroin for about a year. Mother denied ever using methamphetamine and was unable to explain her February 2013 positive UA for amphetamine. She also denied any "current" drug use at the time of the jurisdictional hearing. Mother testified that she did not believe that father posed a risk of harm to E as an untreated sex offender because he was "not a predator" and the nature of his crime of third-degree rape—father, at age 20, engaged in a sexual relationship with a 15-year-old—did not present a risk of harm to E. Nevertheless, mother claimed that she left for Alaska because of father's untreated sex offender status—*i.e.*, so that father could stay in Oregon and finish treatment. She also claimed that she did not know that she lacked permission to go to Alaska.

As noted, the juvenile court concluded that DHS proved by a preponderance of the evidence that "mother's substance abuse interferes with her ability to safely parent" E, and entered a judgment establishing jurisdiction over E.

Under ORS 419B.100(1)(c), jurisdiction is proper when a child's "condition or circumstances are such as to endanger the welfare" of the child. A child's welfare is endangered if the child is exposed "to conditions or circumstances that present a current threat of serious loss or injury." *Dept. of Human Services v. C. J. T.*, 258 Or App 57, 61, 308 P3d 307 (2013). The "key inquiry in determining whether condition[s] or circumstances warrant jurisdiction is whether, under the totality of circumstances, there is a reasonable likelihood of harm to the welfare of the child." *Dept. of Human Services v. C. Z.*, 236 Or App 436, 440, 236 P3d 791 (2010) (internal quotation marks omitted). Further, DHS has the burden to establish a nexus between the allegedly risk-causing conduct or circumstances and risk of harm to the child, and that the risk of harm is present at the time of the hearing and not merely speculative. *Dept. of Human Services v. M. Q.*, 253 Or App 776, 785, 292 P3d 616 (2012).

Accordingly, in this case, where jurisdiction is based solely on mother's substance abuse, DHS must demonstrate a nexus between her substance abuse and a risk of harm to E that was present at the time of the jurisdictional hearing. Mother complains on appeal that DHS failed to prove any "current substance abuse" by her, "let alone any nexus between mother's substance abuse and a risk of harm to [E]." In particular, mother contends that there is no evidence that she used any illegal substances after E's birth and no evidence that E was affected by mother's prior drug use.

DHS counters that it was permissible for the court to infer that mother and father were not credible when they denied drug use at the time of the jurisdictional hearing. DHS further contends that, given E's young age and the fact that mother violated a DHS safety plan, the juvenile court did not err in concluding that E's circumstances endangered her welfare. To support those contentions, DHS points to a combination of the following evidence: (1) mother has a history of drug use, including two positive tests shortly before

E's birth, and has never received treatment; (2) mother and father "remain a couple"; (3) father had a history of drug use and a positive UA for methamphetamine after E's birth; (4) mother denied any current drug use and testified that she believed that father was not currently using drugs.

Ultimately, we agree with mother that the record was legally insufficient to support the court's determination that E was reasonably likely to suffer serious harm in the absence of asserting jurisdiction. In many ways, this case presents issues similar to those in *M. Q.*, 253 Or App 776. There, we addressed whether the record supported a determination that the father was using drugs at the time of the jurisdictional hearing. We concluded that, although there was evidence in the record that would have supported a determination that the father was not credible, *e.g.*, inconsistent testimony and excuses for missing a UA, the court's "apparent disbelief of father's claimed sobriety is not affirmative evidence that he still was using drugs at the time of the [jurisdictional] hearing." *Id.* at 786.

Next, we evaluated whether the evidence from which the court could have found that the father lacked credibility could itself support an inference that the father continued to use drugs. *Id.* at 786-87. We concluded that it could not. We noted that the father had voluntarily agreed to submit to UAs and that DHS had requested only one UA by the time of the jurisdictional hearing. Although the father missed that UA, "this case does not involve the kind of pattern of missed court-ordered UAs from which a factfinder reasonably could infer that a person was attempting to hide his or her drug use." *Id.* at 787. The father had also been visiting his child weekly for months and had never been observed in a drug-altered state. *Id.* We concluded that the record contained no evidence to support an inference that the father was using drugs at the time the court asserted jurisdiction, and noted that "[j]urisdiction cannot be based on speculation that a parent's past problems persist at the time of the jurisdictional hearing in the absence of any evidence that the risk, in fact, remains." *Id.*

We reach similar conclusions in this case. The record lacks evidence that mother had a substance abuse problem at

the time of the hearing. DHS contends that mother's denial of current substance abuse lacked credibility, citing, among other things, her denial of the use of amphetamines despite a positive test in February 2013. We agree that evidence in the record would support a determination that mother is not credible but, as we stated in *M. Q.*, "the juvenile court's apparent disbelief of [mother's] claimed sobriety is not affirmative evidence that [she] still was using drugs at the time of the [jurisdictional] hearing." *Id.* at 786. Further, evidence that would support the court's determination that mother lacked credibility would not itself allow a reasonable factfinder to infer that mother continued to use drugs in August 2013. The only evidence of mother's drug use was a positive test for amphetamine and THC in February 2013—six months before the jurisdiction hearing—and a positive test for THC in April 2013. Mother provided two voluntary UAs after E's birth in April, both of which were negative for any illegal drugs, and she missed one voluntary UA requested by DHS in May. As in *M. Q.*, there was no pattern of missed court-ordered UAs "from which a factfinder reasonably could infer that [mother] was attempting to hide * * * her drug use." Moreover, mother had provided two clean UAs since E had been born, and DHS did not introduce any other evidence that would support an inference that mother was using drugs at the time of the jurisdictional hearing.

In addition, DHS did not introduce any evidence specific to mother that suggested that any drug use by mother put E at a nonspeculative threat of serious loss or injury. We have recognized on several occasions that a parent's substance abuse alone does not create a risk of harm to a child. *See, e.g.*, *C. Z.*, 236 Or App at 443-44. The juvenile court did not explicitly find that mother's substance abuse had endangered or would likely endanger E, and there is no evidence in the record that would support an implicit factual conclusion to that effect. *See Dept. of Human Services v. R. L. F.*, 260 Or App 166, 172-73, 316 P3d 424 (2013) (acknowledging that a parent's alcohol and marijuana use has the potential to constitute "conditions or circumstances" that could expose a child to a threat of harm, but concluding that DHS had presented no evidence to show that the parent's substance abuse created a risk of harm to the child or affected

the parent's daily functioning or ability to parent); *C. Z.*, 236 Or App at 443-44 (the record lacked evidence that the mother's "chemical abuse problem" was a condition or risk that posed a risk to her children). Accordingly, the juvenile court erred in concluding that DHS established the allegation that mother had a substance abuse problem that interfered with her ability to safely parent E.

Given our conclusion that DHS presented insufficient evidence that mother had a substance abuse problem at the time of the jurisdictional hearing, and that there was no evidence that any drug use by mother put E at a nonspeculative risk of serious loss or injury, we must determine the appropriate disposition of this case. As noted, the court asserted jurisdiction over E based on its determination that both father's and mother's substance abuse interfered with their ability to safely parent E. In *M. Q.*, 253 Or App at 788, which also involved a situation in which we concluded that DHS had failed to prove an allegation as to one parent and the other parent had not appealed the jurisdictional judgment, we reversed the jurisdictional judgment "only as to" one parent, and otherwise affirmed. *See also Dept. of Human Services v. J. H.*, 248 Or App 118, 119, 273 P3d 203 (2012).

We conclude that reversal of a jurisdictional judgment "only as to" one parent is inconsistent with the nature of the jurisdictional judgment in this case. *See Dept. of Human Services v. W. A. C.*, 263 Or App 382, 392, 328 P3d 769 (2014). In *W. A. C.*, we concluded that it was error for the juvenile court to assert jurisdiction over a child when the mother had admitted allegations in the dependency petition, but the father had not, and the court had set a contested hearing to consider the allegations against the father. We noted that it was error for the court to assert jurisdiction before adjudicating the allegations against the father because "if a child has a parent who appears in the proceeding and is capable of caring for the child safely, juvenile court jurisdiction is not warranted and that, unless and until DHS proved that neither parent who appeared could safely parent the child, the court could not enter a jurisdictional judgment." *Id.* at 394. We also explained that the juvenile court erroneously attempted to enter a jurisdictional judgment that the juvenile court viewed as only applying to the mother and

having nothing to do with jurisdiction regarding the father. We rejected that notion, indicating that a jurisdictional judgment brings the child within the court's jurisdiction, "which is appropriate only after a determination that, under the totality of the children's circumstances, their welfare is endangered." *Id.* at 395.

Those principles squarely apply to the situation in this case. As noted, given our conclusion that the dependency allegations as to mother's substance abuse were not sufficiently established, the only remaining basis for jurisdiction is that father's substance abuse interferes with his ability to safely parent E. Accordingly, the record reflects one fit parent and one parent with a substance abuse problem that interferes with his ability to parent safely. Of particular note, there is no established link between the proven and unchallenged allegation as to father, and mother's ability to parent safely (*e.g.*, that mother was unable or unwilling to protect E from risks of harm relating to father's substance abuse).

Accordingly, because ORS 419B.100(1)(c) requires the juvenile court to focus "on *the child's* conditions or circumstances at the time of the hearing and whether the totality of those circumstances demonstrates a reasonable likelihood of harm to the welfare of the child[,]" *Dept. of Human Services v. C. F.*, 258 Or App 50, 54, 308 P3d 344, *rev den*, 354 Or 386 (2013), we conclude that the juvenile court erred in asserting jurisdiction over E because the evidence was legally insufficient to demonstrate that, under the totality of the circumstances, there was a current risk of nonspeculative harm to E.

Reversed and remanded.