No. 961 November 5, 2025 641

*This is a nonprecedential memorandum opinion pursuant to ORAP 10.30 and may not be cited except as provided in ORAP 10.30(1).*

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of A. G.-W.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*
*and*

A. G.-W.,
*Respondent,*
*v.*

A. L. W.,
*Appellant.*

Benton County Circuit Court
23JU04058; A186882

Matthew J. Donohue, Judge.

Submitted September 26, 2025.

Aron Perez-Selsky and Peter Druckenmiller filed the briefs for appellant.

Dan Rayfield, Attorney General, Benjamin Gutman, Deputy Attorney General, and Erica L. Herb, Assistant Attorney General, filed the brief for respondent Department of Human Services.

Christa Obold Eshleman and Youth, Rights & Justice filed the brief for respondent A. G.-W.

Before Tookey, Presiding Judge, Egan, Judge, and Jacquot, Judge.

TOOKEY, P. J.

Affirmed.

**TOOKEY, P. J.**

Mother appeals from the juvenile court's judgment denying her "Motion to Dismiss Commitment to DHS Custody and Terminate Wardship". Mother assigns error to the juvenile court's denial of her motion, particularly the court's determination that mother's "mental health and substance use issues[,]" together with mother's lack of appreciation for the risks of father's continued use of methamphetamine, posed a current threat of serious loss or injury to A which was likely to be realized. We conclude that there was legally sufficient evidence that the bases of jurisdiction continued at the time of the hearing and that returning A to mother would have posed a serious, current, nonspeculative risk of injury which was reasonably likely to be realized. We therefore affirm.

In October 2023, the juvenile court asserted jurisdiction over A, who was then approximately three months old, on the bases that (1) mother's substance abuse impaired her ability to safely parent; (2) A tested positive for illicit substances at the time of birth; (3) mother's mental health problems impaired her ability to safely parent; (4) mother's erratic and/or impulsive behavior impaired her ability to safely parent; (5) father's unameliorated pattern and history of substance use interfered with his ability to safely and appropriately parent; and (6) father lacked the parenting skills to safely and appropriately parent. In September 2024, mother filed a motion to terminate wardship over A, which the juvenile court denied. Mother appeals the resulting judgment.

On appeal, mother argues that continuing jurisdiction was improper because she had successfully completed a substance abuse program and was engaged in after-care, she was actively engaged in mental health treatment services, and her mental health diagnoses and conduct at the time of the hearing did not pose a current threat of serious loss or injury to A. The Oregon Department of Human Services (ODHS) argues that continued jurisdiction was proper because mother did not appreciate the risks to A caused by her past substance abuse and father's current

methamphetamine use, and because mother failed to adequately address her mental health issues with treatment.

Mother does not request *de novo* review and, given that this is not an exceptional case, we do not exercise our discretion to do so. ORS 19.415(3)(b); ORAP 5.40(8)(c). We view the evidence "as supplemented and supported by permissible derivative inferences, in the light most favorable to the juvenile court's disposition," and "assess whether the evidence was sufficient to permit the challenged determination." *Dept. of Human Services v. D. L.*, 308 Or App 295, 297, 479 P3d 1092 (2020), *rev den*, 367 Or 668 (2021) (internal quotation marks and citation omitted).

Under ORS 419B.100(1)(c), jurisdiction is proper over a child "[w]hose condition or circumstances are such as to endanger the [child's] welfare." A child's welfare is endangered when the child "is exposed to conditions or circumstances that present a current threat of serious loss or injury." *Dept. of Human Services v. E. M.*, 264 Or App 76, 81, 331 P3d 1054 (2014) (internal quotation marks omitted).

When a parent moves to dismiss jurisdiction and the permanency plan is reunification, the proponent of continued jurisdiction has the burden to prove, by a preponderance of the evidence, that the facts upon which jurisdiction are based persist such that they continue to "pose a current threat of serious loss or injury that is reasonably likely to be realized." *Dept. of Human Services v. J. M.*, 275 Or App 429, 441, 364 P3d 705 (2015), *rev den*, 358 Or 833 (2016). The risk of harm must be current and nonspeculative. *Id.*

When, as here, parents are coparenting a child, and one coparent moves to dismiss jurisdiction, the juvenile court considers whether the coparents, together, can provide a safe home for the child. *See Dept. of Human Services v. J. J. B.*, 291 Or App 226, 231-32, 418 P3d 56 (2018) (declining to "artificially separate the allegations regarding father from those involving mother" because "[t]he allegations and evidence regarding father and the allegations and evidence regarding mother were closely intertwined."). That is because the focus "is on *the child's* conditions or circumstances at the time of the hearing and whether the totality of those circumstances

demonstrates a reasonable likelihood of harm to the welfare of the child." *Dept. of Human Services v. C.F.*, 258 Or App 50, 54, 308 P3d 344, *rev den*, 354 Or 386 (2013) (emphasis in original) (in appeal by father of juvenile court judgment taking jurisdiction over children, considering history of domestic violence between father and mother and whether it created a current threat of serious injury to children). Accordingly, the court must "consider *all of the facts presented in the case* before it." *Dept. of Human Services v. W. A. C.*, 263 Or App 382, 393, 328 P3d 769 (2014) (emphasis in original).

Here, the juvenile court focused largely on mother's "untreated psychological issues [which have] led to perseverations, which [the court] think[s] are harmful to [A]" and on father's current, active use of methamphetamine. In doing so, the juvenile court relied on testimony that mother had failed to acknowledge the danger that her previous drug use and father's current methamphetamine use posed to A; that mother continued to live with father, who was actively using methamphetamine; that mother had failed to take steps to reduce the risk to A from exposure to methamphetamine; that mother believed A had certain medical issues (these medical issues had not been observed by anyone else); and that mother had not completed mental health treatment to the satisfaction of her providers because she failed to engage with treatment as regularly or honestly as those providers recommended. Mother stated that she would not leave A alone with father due to his methamphetamine use. But mother admitted that she did not know where father kept his methamphetamine or where he used methamphetamine, and her testimony indicated that she planned to continue living and coparenting with father. The juvenile court heard testimony from mother's mental health provider that there could be some "cognitive dissonance challenges" in living with someone (in this case father) who continues to use controlled substances despite that use being a barrier to mother's reunification with child. The juvenile court also heard testimony from a pediatric physician that methamphetamine use in the home could pose a substantial threat to a child, because that child could ingest the substance or be in the care of a person (in this case father) who is "not adequately available mentally to care for the child" because

of that person's methamphetamine use. The juvenile court then determined that mother's belief that father is "not a threat to [A] if he is in the home using methamphetamine[,]" in the face of substantial evidence that methamphetamine use in the home would be a threat to A, was a part of her ongoing and untreated psychological issues.

Additionally, the juvenile court heard testimony that although mother had engaged in some sobriety and mental health services, she had not completed a sobriety program at the level recommended by her mental health service provider following an Alcohol and Drug Services Assessment, which was "intensive outpatient treatment, which [is] *** three to five treatment sessions per week[,]" and instead graduated from a "level one outpatient" program. The record indicates that mother was concerned that A was suffering adverse health effects from taking a drug prescribed by A's physician to treat a vascular malformation. However, A's resource parents, ODHS caseworkers, and physicians reported that they did not see any evidence of those adverse health effects. The record also indicates that mother reported concerns about A experiencing a breathing problem to ODHS caseworkers and A's resource parents, and that she called 9-1-1 "for potential medical issues with [A] during a visit with [O]DHS when no one else saw that happening." The juvenile court determined that this was one example of mother "essentially perseverating on medical issues with [A] that just nobody else saw." Mother has consistently displayed hypervigilance regarding A's health and perseverates on obtaining treatment for nonexistent medical issues for A.

Those mental health and substance abuse treatment concerns, coupled with father's ongoing use of methamphetamine and the risk of exposing A to methamphetamine in the home where mother lives with father, led the juvenile court to determine that dismissing jurisdiction and returning A to mother "would pose a serious risk of injury[.]"

Having reviewed the record, we agree with ODHS that there was legally sufficient evidence to permit a determination that returning A to mother at the time of the hearing would have posed a serious, current, nonspeculative risk

of injury which was reasonably likely to be realized. The juvenile court did not err in determining that mother had a "high probability of relapse *** if we have A back in the home, with that level of stress, given [mother's] responses to stress, *** given that there [would] be an active substance abuse user with potentially controlled substances in the home." Mother's minimization of father's continued drug use further increased the likelihood that A would be harmed if wardship were terminated. *See D. L.*, 308 Or App at 308 (stating that the juvenile court was entitled to consider mother's continued minimization of harmful conduct in determining the current likelihood that a child will suffer serious loss or harm if wardship is terminated). The combination of the mental health and substance abuse treatment that was engaged in by mother, mother's ongoing mental health issues, mother's minimization of father's methamphetamine use, and the ongoing cohabitation of mother and father continued to pose a current threat of serious loss or injury that was reasonably likely to be realized.

For those reasons, the juvenile court did not err in denying mother's motion.

Affirmed.