No. 144　　　　February 25, 2026　　　　425

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of K. S.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

K. C. W.,
*Appellant.*

Linn County Circuit Court
22JU04441; A187937 (Control)

In the Matter of K. S.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

K. C. W.,
*Appellant.*

Linn County Circuit Court,
22JU04442; A187938

In the Matter of N. S.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

K. C. W.,
*Appellant.*

Linn County Circuit Court
22JU04443; A187939

Heidi M. Sternhagen, Judge pro tempore.

Submitted November 20, 2025.

Shannon Storey, Chief Defender, Juvenile Appellate Section, and Holly Telerant, Deputy Public Defender, Oregon Public Defense Commission, filed the brief for appellant.

Dan Rayfield, Attorney General, Benjamin Gutman, Interim Deputy Attorney General, and Inge D. Wells, Assistant Attorney General, filed the brief for respondent.

Before Aoyagi, Presiding Judge, Egan, Judge, and Pagán, Judge.

EGAN, J.

Reversed.

Aoyagi, P. J., concurring.

**EGAN, J.**

Mother appeals from the juvenile court judgments establishing general guardianships over her three children, who are eligible for enrollment with the Confederated Tribes of Siletz Indians, under ORS 419B.366. This case is governed by the Indian Child Welfare Act (ICWA), 25 USC sections 1901 to 1963 (1978), and the Oregon Indian Child Welfare Act (ORICWA).[1]

Mother argues that the juvenile court erred in determining that the Oregon Department of Human Services (ODHS) proved, by clear and convincing evidence, a nexus between mother's substance use and the likelihood that the children would suffer "serious emotional or physical damage." Mother concedes that she did not preserve that issue below but contends that 25 USC section 1914 permits her to raise it for the first time on appeal. For the reasons that follow, we agree that mother's ICWA-based challenge is reviewable despite lack of preservation, and we further conclude that the juvenile court erred in finding on this record that ODHS met its burden to prove by clear and convincing evidence that custody by mother was likely to result in serious emotional or physical damage to the children.[2] Accordingly, we reverse.

In assignments one through three, mother contends that ODHS failed to meet its burden under ICWA to prove, by clear and convincing evidence, that custody of her children is likely to result in serious emotional or physical damage to them. In assignments four through six, mother argues that the juvenile court plainly erred in ruling that the department met its burden under ORS 419B.366(4), a provision of ORICWA, including the requirement of evidence

---

[1] Oregon Indian Child Welfare Act, Or Laws 2020, ch 14, §§ 1 - 66 (Spec Sess 1) (codifying new provisions at ORS chapter 419B.600 to 419B.665 and amending portions of ORS chapters 350, 418, 419A, and 419B).

[2] "An Indian child's parent has continued custody of the Indian child under ORS 419B.600 to 419B.654 if the parent currently has, or previously had, custody of the Indian child." ORS 419B.606(2). *See also* 25 USC § 1912(e) ("No foster care placement may be ordered in such proceeding in the absence of a determination, supported by clear and convincing evidence, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child.").

demonstrating a "causal relationship" between mother's conditions and the likelihood of such damage. In assignments seven through nine, mother challenges the establishment of guardianships under ORS 419B.366. The dispositive issue before us is the one that mother raises in the first through third assignments: whether, as required by ICWA, there was clear and convincing evidence supporting the juvenile court's finding that ODHS established the required nexus between mother's use of substances and the likelihood of serious physical or emotional damage to the children. In light of our conclusion that there was not, we do not address mother's remaining assignments.

## BACKGROUND

In October 2022, ODHS removed mother's children from her care. The following month, the juvenile court asserted jurisdiction over the children on both parents' admission that their "substance abuse interferes with their ability to safely parent the child[ren]." ODHS placed the children in the care of paternal grandmother and her partner ("grandparents").

Mother later successfully engaged in drug treatment, and in 2023, ODHS returned all three children to parents' care. Mother moved with children into grandparents' home. Mother subsequently relapsed, and ODHS again removed the children from mother's custody, allowing them to remain in grandparents' home. Mother was later discharged from a treatment program for noncompliance.

In August 2024, following a permanency hearing, the juvenile court changed the permanency plans for the children from reunification to guardianship.[3] In March 2025, ODHS moved to establish general guardianships for the children under ORS 419B.366 proposing grandparents as guardians.

The juvenile court held a hearing on guardianship in May 2025. Father, children, and the tribe supported the

---

[3] Grandparents were the department's proposed guardians for all three children, and they were willing to serve in that role. Father, who was incarcerated and serving a 34-month sentence at the time of the hearing, supported the guardianship below and is not a party to this appeal.

proposed guardianships. Evidence showed that mother "participate[d] in video calls with the children sporadically" and that she had visited only "a few times" since November 2024. Mother's last in-person visit was in January 2025, and she declined ODHS's offers to assist in establishing a visitation plan.

At the time of the hearing, mother had recently lost her housing and testified that she did not have a permanent place to stay. ODHS presented evidence that mother was currently in a suboxone program but was participating inconsistently and failed to provide urinalysis samples that ODHS had requested. Mother had "admitted to ongoing substance use and reports she uses daily." ODHS also noted that two of her children tested positive for methamphetamines at birth and that one of the children is now being treated for a heart murmur that has been present since birth. The children were two, four, and five at the time of the hearing.

Caseworker Kylee Barnes testified that mother's substance use was the "main barrier" to her ability to parent within a reasonable time. Barnes believed that mother was using substances at the time of the hearing based on mother's statement during an April 2025 meeting that she "ha[d] no reason to get sober if her children are not with her" and she had no hope of staying sober without them. Barnes had encouraged mother to engage with in-person treatment, but mother stated that she would only enter a residential treatment program if her children were placed in her custody during that period.

During mother's testimony, she expressed difficulty understanding that her substance use posed a risk of harm to her children. She testified that she agreed to return to treatment only after Barnes explained that her substance use is part of the reason that she is deemed unsafe to her children. Mother testified that she had maintained sobriety from substances but acknowledged consuming alcohol on several occasions and declining urinalysis testing each time it was offered to her. As to her children, mother testified that she thought that the children should not be placed with grandparents but that the grandparents are meeting the children's needs.

ODHS also presented testimony from a qualified expert witness for the Confederated Tribes of Siletz Indians, Amanda Barnhart. Barnhart testified that the grandparents' home qualified as a "culturally appropriate placement" that complied with the placement preferences. She further testified that, based on "father's incarceration, for his part, and mother's inability to maintain sobriety for the life of the case," it was the tribe's position that "if the children were returned to the parents today," the children were likely to suffer "serious emotional or physical damage."

At the conclusion of the hearing, the juvenile court found that mother's testimony was not "particularly credible" and that Barnhart was a qualified expert witness. The juvenile court expressed concern regarding mother's ongoing substance use and "chaotic behavior," in that mother frequently went from Salem to the coast and back and could not predict where she would be ahead of time. The court ultimately granted ODHS's motion and entered guardianship judgments in each of the children's cases, appointing grandparents as legal guardians and concluding that "continued custody of the ward[s] by the parents is likely to result in serious emotional/physical damage."

## STANDARD OF REVIEW

This court reviews the juvenile court's legal conclusions for errors of law and is bound by its explicit and implicit findings of historical fact if there is any evidence in the record to support them. *Dept. of Human Services v. J. G.*, 260 Or App 500, 504, 317 P3d 936 (2014) (citing *Dept. of Human Services v. N. S.*, 246 Or App 341, 344, 265 P3d 792 (2011), *rev den*, 351 Or 586 (2012)). We also defer to the juvenile court's credibility determinations. *Dept. of Human Services v. A. J. G.*, 304 Or App 221, 230, 465 P3d 293, *rev den*, 366 Or 826 (2020).

## DISCUSSION

A.  *Preservation*

Mother opposed the guardianship below, but she did not preserve her specific argument that ODHS failed to prove a nexus between her substance use and a likelihood of

serious emotional or physical damage to her Indian children under 25 USC section 1912(e). She argues that preservation is not required because we have held that a parent of an Indian child may raise a violation of ICWA "in any court of competent jurisdiction," including an appellate court, for the first time on appeal under section 1914. *J. G.*, 260 Or App at 507. She contends that the court's decision to establish guardianships under ORS 419B.366 violates ICWA. Alternatively, she requests plain error review.

ODHS responds that the guardianships were established pursuant to ORICWA, not ICWA, and that ORS 419B.660(1)(a) limits ICWA preemption to circumstances where Oregon law affords a "lower standard of protection" than section 1912(e), which ODHS asserts is not the case here. ODHS further urges this court to decline mother's request for plain error review.

We agree with mother. In *J. G.*, we held that Oregon's preservation requirements are preempted where they conflict with ICWA's enforcement mechanism. 260 Or App at 508-13. We examined the text of section 1914, which provides:

> "Any Indian *child who is the subject of any action for foster care placement* or termination of parental rights *under State law*, any parent or Indian custodian from whose custody such child was removed, and the Indian child's tribe *may petition any court of competent jurisdiction* to invalidate such action upon a showing that such action violated any provision of sections 1911, 1912, and 1913 of this title."

(Emphases added.) We explained that, through that provision, "Congress empowered particular parties with a right to challenge certain Indian child custody proceedings on the basis of ICWA violations." *J. G.*, 260 Or App at 512. Given that ICWA provides "minimum Federal standards for the removal of Indian children from their families and section 1914 provides a method of enforcing those minimum federal standards," the preservation rule—which could "preclude[] a party from using section 1914 on appeal to assert a right under section 1912(d)"—"stands as an obstacle to the accomplishment and execution of the full purposes and objectives

of Congress" and, consequently, is preempted. *Id.* at 512-13 (internal quotation marks omitted).

ODHS's reliance on ORICWA is unavailing. ICWA does not independently authorize guardianships; rather, it supplements state child welfare proceedings with additional protections when a state seeks to effectuate placements or caregiver relationships under its own laws. In *J. G.*, we held that a guardianship established under ORS 419B.366 constitutes a "foster care placement" under ICWA; therefore, we could review the mother's unpreserved challenge. 260 Or App at 512-13. Accordingly, mother may challenge the guardianships under ICWA regardless of whether they were ordered pursuant to ICWA, ORICWA, or another source of state law. *Id.* at 520 ("[T]he guardianship in this case[, which was established under ORS 419B.366,] was a 'foster care placement' under ICWA.").

Because we conclude that mother's failure to preserve her argument in the juvenile court does not preclude our review, we now turn to the merits of her arguments.

B.   *Mother's Arguments Against Guardianship*

Under ORS 419B.366, a juvenile court may grant a motion to establish a guardianship only if it approves a plan of guardianship at a permanency hearing under ORS 419B.476 and subsequently makes a series of determinations, including that:

> "(a)   The ward cannot safely return to a parent within a reasonable time;
>
> "(b)   Adoption is not an appropriate plan for the ward;
>
> "(c)   The proposed guardian is suitable to meet the needs of the ward and is willing to accept the duties and authority of a guardian; and
>
> "(d)   Guardianship is in the ward's best interests."

ORS 419B.366(6).

Section 1912(e) requires the court to make additional determinations. Section 1912(e) provides:

> "No foster care placement may be ordered in such proceeding in the absence of a determination, supported by

clear and convincing evidence, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child."[4]

*See also* ORS 419B.366(4)(a)(C)(i) (requiring the same finding). As noted above, a guardianship under ORS 419B.366 qualifies as a "foster care placement" for the purposes of ICWA. *J. G.*, 260 Or App at 520. Thus, before the juvenile court could order guardianships, ODHS, as the moving party, had the burden to provide clear and convincing evidence to show that mother's custody of the children was

---

[4] ICWA also prohibits courts from relying solely on circumstances such as "substance abuse" or other nonconforming social conditions without establishing a causal link to serious emotional or physical harm as provided under 25 CFR § 23.121(c) and(d):

"(c) For a foster-care placement or termination of parental rights, the evidence must show a *causal relationship* between the particular conditions in the home and the likelihood that continued custody of the child will result in serious emotional or physical damage to the particular child who is the subject of the child-custody proceeding.

"(d) *Without a causal relationship identified in paragraph (c)*, *evidence that shows only the existence of* community or family poverty, isolation, single parenthood, custodian age, crowded or inadequate housing, substance abuse, or *nonconforming social behavior does not by itself constitute clear and convincing evidence* or evidence beyond a reasonable doubt that continued custody is likely to result in serious emotional or physical damage to the child."

(Emphases added.) Additionally, the Bureau of Indian Affairs interpretive guidelines, though not binding, provide instructive guidance on ICWA's requirements. *Quinn v. Walters*, 320 Or 233, 260, 881 P2d 795 (1994). They explain:

"The rule prohibits relying on any one of the factors listed in paragraph (d), absent the causal connection identified in (c), as the sole basis for determining that clear and convincing evidence or evidence beyond a reasonable doubt support a conclusion that continued custody is likely to result in serious emotional or physical damage to the child. This provision addresses the types of situations identified in the statute's legislative history where Indian children are removed from their home based on subjective assessments of home conditions that, in fact, are not likely to cause the child serious emotional or physical damage.

"* * * * *

"These provisions recognize that *children can thrive* when they are kept with their parents, *even in homes that may not be ideal* in terms of cleanliness, access to nutritious food, or personal space, or *when a parent is* single, impoverished, or *a substance abuser*. Rather, *there must be a demonstrated correlation between the conditions of the home and a threat to the specific child's emotional or physical well-being*."

US Dept of the Interior, Bureau of Indian Affairs, *Guidelines for Implementing the Indian Child Welfare Act*, § G.2 at 53 (Dec 2016), https://www.bia.gov/sites/default/files/dup/assets/bia/ois/pdf/idc2-056831.pdf (accessed Feb 19, 2026) (emphases added).

likely to result in serious emotional or physical damage to the children. 25 USC § 1912(e).

Mother argues that ODHS failed to establish that causal relationship between mother's substance use and a likelihood of serious emotional or physical damage to the children as required under section 1912(e). We agree. Although the record contains very general evidence that mother's substance use continued at the time of the hearing, it does not demonstrate how that condition posed a risk of serious emotional or physical damage to the children at the time of the guardianship proceeding. The only direct evidence of mother's continuing substance use is the vague statement that she "admitted to ongoing substance use and reports she uses daily," which does not describe what mother uses, or how much, in a way that allows an inference that it creates a likelihood of serious emotional or physical damage to the children. Mother could be using large amounts of narcotics and methamphetamine every day, or she could be using alcohol in large or small amounts. The record is also devoid of evidence of the effects of mother's substance use on her parenting. *Accord Dept. of Human Services v. A. R. E.*, 340 Or App 73, 76-77, 571 P3d 211 (2025) (the mother's drug use supported dependency jurisdiction in an ICWA case where there was evidence of "mother's long-term daily fentanyl use; her acknowledgment that fentanyl is dangerous, but that she believes she has it 'under control' and that her high tolerance will protect her from overdosing; and the presence of fentanyl, nor-fentanyl, and methamphetamine found in a hair follicle test of child, which an expert testified was likely due to environmental exposure or transfer from mother to child through physical contact"); *see generally Dept. of Human Services v. E. M.*, 264 Or App 76, 83, 331 P3d 1054 (2014) (noting, in the context of juvenile dependency jurisdiction under ORS 419B.100, that "[w]e have recognized on several occasions that a parent's substance abuse alone does not create a risk of harm to a child").

To the extent the juvenile court relied on mother's instability and chaotic movement between Salem and the coast, the record also lacks evidence that that behavior is likely to result in serious emotional or physical damage to

the children.[5] It is not clear from the record that that behavior would continue if the children were in mother's care, and, in any event, ODHS did not present any evidence of how it would affect the children. *Accord, e.g.*, *Dept. of Human Services v. M. H.*, 256 Or App 306, 331, 300 P3d 1262 (2013) (reversing basis for dependency jurisdiction under ORS 419B.100 based on allegation of parents' homelessness and unemployment on the ground that "homelessness and unemployment are not, alone, sufficient bases for jurisdiction, and [ODHS] offers no explanation of how the family's living conditions would put [the child]'s safety at risk").

On this record, the evidence does not permit the inference required under ICWA that custody by mother was likely to result in imminent serious emotional or physical damage to the children. Accordingly, the juvenile court erred in ordering guardianships under ORS 419B.366.

Reversed.

**AOYAGI, P. J.,** concurring.

I agree that ODHS failed to make the record necessary to meet its burden of proof and therefore concur with the result. I write separately, however, to emphasize that this is not a case in which a fulsome record was made, the facts are established, and those facts fall short of what is required to establish guardianships for these children. Rather, this is a case in which minimal evidence came in, the facts are murky, and it is the thin record that necessitates reversal.

These are very young children—ages five, four, and two at the time of the guardianship hearing—one of whom tested positive for methamphetamine at birth, and another of whom tested positive for methamphetamine and ketamine at birth. The children have been wards of the court for most of their lives, based on mother's substance abuse. Their plans were changed to guardianship in August 2024, and the proposed guardians are their paternal grandparents, with whom they have lived for a long time. The record

---

[5] The juvenile court appeared to rely on mother's instability and chaotic trips in addition to her substance use, which was the only basis for dependency jurisdiction. On appeal, mother does not challenge the court's reliance on that additional circumstance, and we therefore consider it as well.

suggests that mother may be homeless, jobless, and seriously drug addicted, and that she may be unable or unwilling to stop using drugs. But "may" is not enough to meet the burden of proof. ODHS failed to make a sufficient record at this hearing to meet the legal standard to establish guardianships—and, because this is an ICWA case, mother is allowed to raise that issue for the first time on appeal, without the limitations of plain-error review. We therefore must reverse. It is the record that falls short, however, not necessarily the actual facts on the ground, and I think it important to emphasize that point, given the history of this case and the ages of these children.

Finally, because the term "continued custody" is somewhat confusing, it is worth noting that mother does not currently have custody of the children and that the effect of this opinion is not to return custody to her. Although we are reversing the judgments establishing guardianship, the children remain wards of the court, with permanency plans of guardianship, and ODHS will presumably make a more fulsome record when it tries again to establish guardianships.